EMANUEL E. KATZ, PROSECUTOR, v. HENRY H. ELDRIDGE . ET AL., RESPONDENTS.

AUGUST CARRELL, PROSECUTOR, v. JAMES W. Mc-CARTHY, RESPONDENT.

THE STATE, RESPONDENT, v. DOMINISK SINISI, PROSECUTOR.

Argued November 4, 1921—Decided November 25, 1921.

1. Chapter 103 of the session laws of 1921 (*Pamph. L.*, *p.* 171), commonly called the "Van Ness" act, does not, in providing for a summary trial before a magistrate, without a jury, militate against sections 7 and 8 of article 1 of the state constitution.
2. From the incipiency of the state government the legislature has always dealt with the subject of intoxicating liquors under the exercise of the police power, in the form of regulative and pro-hibitory local option enactments, and the person charged with the violation of the law was denominated a disorderly person.

3. The adoption of the eighteenth amendment to the federal constitution and the federal enforcement legislation, did not take away from the state the right to deal with the subject under the exercise of the police power, as long as such exercise be not in conflict with the amendment of the federal legislation enforcing it.

4. The eighteenth amendment to the federal constitution contains no characterization of offences committed in violation thereof, but leaves to congress and the states, if they deem it expedient, to enforce the amendment by "appropriate legislation;" what the character of that legislation shall be is for the legislature of each state to determine, provided only that it shall not run counter to the amendment itself and to the legislation of congress enacted thereunder.

5. The constitutional right of trial by jury applies only to cases in which the prerogative existed by common law or was secured by statute at the time the constitution was adopted, and not in those cases where the right and the remedy with it are thereafter created by statute.

6. Whether the legislature shall confide the power and confer the jurisdiction of dealing with offenders against a law enacted in the exercise of the police power to a city magistrate, or to a police justice, or a county court, is a matter in the legislative discretion.

7. The title of "An act concerning intoxicating liquors used or to be used for beverage purposes," expresses the legislative purpose as revealed by the entire enactment.

8. The *modus operandi* by which the legislative purpose is to be attained need not be included in the title to the act.

9. The provision in the Van Ness act (*Pamph. L.* 1921, *p.* 171), in the light of the prohibition provisions therein, are not unreasonable.

10. The legislature, in the enforcement of the police power, has a right to provide for the forfeiture *pro tempore*, or even the destruction, if deemed necessary for the public health and welfare, of any confessedly illegal instrumentality used in the perpetration of any offence.

11. No person or corporation has a vested right in the rules of evidence. So long as the legislature in prescribing rules of evidence in either civil or criminal cases leaves a party a fair opportunity to make his defence and to submit all the facts, its acts cannot be assailed on constitutional grounds.

12. The Van Ness act (*Pamph. L.* 1921, *p.* 171) constitutes a valid exercise of legislative power.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutors, *Robert H. McCarter, William Elmer Brown, George W. C. McCarter* and *Warren Dixon.*

For the respondents, *George T. Vickers, Pierre P. Garven, J. Henry Harrison, Wilbur A. Mott, William A. Newcorn* and *Charles A. Wolverton.*

The opinion of the court was delivered by

MINTURN, J.   Out of a list of a few hundred causes before us, upon writs of *certiorari,* involving the legality of the procedure, as well as the trial of the prosecutors under the provisions of the so-called "Van Ness" act, these three causes have been selected by agreement of counsel, as representative types, and, therefore, as presenting most, if not all, the contentions which counsel are desirous of urging, as legal grounds in all the causes, for vacating the processes, in the first instance, or of setting aside the convictions where trials were had as the cases may require.

The legislature at its latest session enacted chapter 103 of the laws of 1921 (*Pamph. L., p.* 171) entitled "An act concerning intoxicating liquors, used or to be used for beverage purposes."   The constitutionality of the main feature of this enactment presents the subject-matter of this controversy.   At the same session were passed three other acts upon the same general subject, which, under well-recognized canons of statutory construction and interpretation, must be deemed as legislation *in pari materia* with the controverted enactment, and, therefore, illuminative of its provisions as a concrete expression of the legislative will.

Chapter 5 (*Pamph. L.* 1921, *p.* 21) of the same session repeals "An act to prohibit the manufacture, sale or transportation within the State of New Jersey of intoxicating liquors for beverage purposes; defining the term 'intoxicating liquors' and providing for the punishment of violations thereof," approved March 2d, 1920.

Chapter 150 of the session (*Pamph. L.* 1921, *p.* 391) is "An act concerning intoxicating liquors used or to be used for non-beverage purposes," while chapter 216 (*Pamph. L.* 1921,

*p.* 693) amends the last-mentioned enactment. Viewed as a concrete expression of the legislative will, these enactments must be read *in pari materia,* and come to us under well-settled principles, enveloped in a presumption of constitutionality which requires that a construction be accorded to any of them which will support it if possible as a valid exercise of legislative power rather than a construction which will defeat and annul the expressed legislative will. *Dixon* v. *Russell,* 58 *N. J. L.* 296; *State* v. *DeLorenzo,* 81 *Id.* 613.

Nor are we at all concerned with the wisdom and the general policy of this enactment, those features of legislation under our constitutional divisions of power being left entirely to the judgment of the legislature as the representatives of the popular will. *Bigelow* v. *Old Dominion Mining Co.,* 74 *N. J. Eq.* 457.

The prosecutors are before us upon writs of *certiorari* intended to review the legality of certain provisions of the act known as chapter 103, as well as the validity of its title and its constitutionality.

In its thirty-fourth section the act provides that upon complaint before a magistrate of the violation of one or more of the provisions of the act, it shall be the duty of such magistrate and power is conferred upon him to issue his warrant for the arrest of such person and "summarily without a jury and without any pleadings to try the person so arrested and brought before him and to determine and adjudge his guilt or innocence."

The forty-fourth section adjudges any person thus found guilty "to be a disorderly person," who, under the forty-fifth section, "shall be sentenced * * * to be confined in the workhouse, penitentiary or common jail of the county * * * for a period not to exceed six months, or to pay a fine not to exceed five hundred dollars, or both, in the discretion of such magistrate; and also to pay the costs."

The basic challenge directed against this legislation is that the act "expressly authorizes a trial by the magistrate without out a jury," and, therefore, it militates against sections 7 and 8 of article 1 of the state constitution, which provide that

"the right of trial by jury shall remain inviolate," and that "in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury."

The rationale of the argument presented in this contention is summarized in the brief of counsel thus: "The manufacture, transportation, sale, &c., of intoxicating liquor for beverage purposes in violation of the constitution of the United States cannot be made punishable by imprisonment for six months in the county jail, workhouse or penitentiary by the courts of New Jersey without a trial by jury."

The fallacy of this contention is, that it assumes that the legislation in question was enacted by the legislature of the state in pursuance of an acquired or delegated power from the federal government, under the provisions of the eighteenth amendment to the federal constitution. This fallacy contains within itself the further gratuitous assumption that since that amendment the power to enact prohibitory laws conceded to the federal government by the states, the latter may not legislate upon the subject in any manner inharmonious with the legislation of the federal congress; and that because the legislation by congress, known as the "Volstead act," characterizes violations of the provisions of that act as a "crime," any offence created by the state legislature under the general police power of the state, cannot deal with the subject-matter of the amendment upon a plane or theory substantially different from that adopted by congress. This conception of the extirpation *pro tanto* of the police power of the state is contrary to settled fundamental principles, adopted at the formative stage of constitutional construction, when it was held that the federal government possessed only such powers as were expressly or impliedly conceded by the states, and that the latter, together with the people, retained all the powers incident to sovereignty to be employed as may be deemed expedient in the public interest. *10th Amend. Fed. Con.; Gibbons* v. *Ogden,* 9 *Wheat.* 1.

And, so, it was held that no power is conferred upon congress to establish mere police regulations within any state. *United States* v. *DeWitt,* 9 *Wall.* 41.

To the same effect it was declared that "the states did not intend by adopting the fourteenth amendment to impose restraints upon the exercise of their powers for the protection of the safety, health or morals of the community." *Mugler* v. *Kansas*, 123 *U. S.* 205.

And it was held, in furtherance of the same basic principle, that the fourteenth amendment to the federal constitution did not take from the states the police power reserved to them at the time of the adoption of the federal constitution. *Slaughter House Cases*, 16 *Wall.* 36.

The only limitation imposed upon the states by a constitutional concession of this nature is that under their reserved powers they shall not enact legislation conflicting with the federal amendment, or conflicting with legislation enacted by congress in virtue of the constitutional power thus conceded. *Tennessee* v. *Davis*, 100 *U. S.* 257; *Cooley Const. Lim.* 24.

It may be assumed, therefore, that when the power to legislate upon the subject of prohibition was conceded by the states to the federal government, it did not follow that the states by such concession divested themselves of the powers of sovereignty, so as to deprive them of the right to exercise the police power as might seem expedient for the public interest, so long as such exercise of power would not conflict with the powers conceded by the federal amendment.

With this premise in mind, an examination of our statutory law will disclose that from the incipiency of the state government the legislature has always dealt with the subject of intoxicating liquors in an exceptional manner, under the exercise of the police power, in the form of regulative and prohibitory local option enactments, and the person charged with the violation of the law was denominated a disorderly person.

The case of *Paul* v. *Gloucester*, 50 *N. J. L.* 585, furnishes an elaborate and comprehensive discussion by the Court of Errors and Appeals upon the subject. In that case Mr. Justice Van Syckel declared that this power of the state will be assumed as a settled proposition of constitutional law, "which cannot be successfully controverted without subverting legis-

lation which has stood unchallenged for more than a century," and that "the legislature has power to pass a prohibitory law," and, concerning the character of this prohibitive legislation, the learned justice declared: "The sale of intoxicating liquors has from the earliest history of our state been dealt with by legislation in an exceptional way. It is a subject by itself, to the treatment of which all the analogies of the law appropriate to other topics cannot be applied." *Id.,* 595.

The right of the state, therefore, to enact legislation of this character under its sovereign prerogative power, in the exercise of the police power having been established, the resulting inquiry is presented whether such legislation militates against the state concession to the federal government, known as the eighteenth amendment, and against the provisions of the "Volstead act."

Obviously, the constitutional amendment itself contains no limitation or restrictions upon the powers of the state to enact legislation of the same general character; but in its second section the amendment provides that "the congress and the several states shall have concurrent power to enforce this article by appropriate legislation." If it were not for the existence of this concurrent power of enforcement, it might be claimed that the federal government could arrogate to itself the sole power of enforcement and thus preclude the states from adopting legislation upon the subject. *New York Central Railroad* v. *Winfield,* 244 *U. S.* 147; *Sturges* v. *Crowninshield,* 4 *Wheal.* 122.

But the concurrent power to legislate upon the subject being conceded, the inquiry necessarily results, In what respect is this state legislation antagonistic or inconsistent with the federal act, so as to be considered hostile to its provisions? The argument is, that the Volstead act erects the offence of violation into a crime, while the state legislation persists in characterizing it in conformity with the settled usage and policy of the state as a disorderly act, and makes it punishable as such. From this contention the resulting corollary is urged that, conceding the eighteenth amendment to be the law of the land, and that since its resulting congressional

enactment has characterized an offence against the amendment as a crime triable by jury, the concurrent legislation of the state must *ex necessitate* adopt the same classification, and provide for the prosecution of the offender by jury trial only, and in no other manner than that prescribed in the federal act. For the reasons already enunciated, and for the reasons following, we observe no merit in this contention.

It will be observed that the eighteenth amendment contains no characterization of the offence, but leaves it to congress and the states, if they deem it expedient, to enforce the amendment by "appropriate legislation;" what the character of that legislation shall be is for the legislature of each state to determine, provided only that it shall not run counter to the amendment itself, and to the legislation of congress enacted thereunder.

If we consider the construction put upon other and equally important and fundamental amendments to the federal constitution, it will become manifest that such is the constitutional test.

Referring to the operation of the fourteenth amendment upon the legislative power of the states, the United States Supreme Court, in *Missouri v. Lewis,* 101 *U. S.* 22, declared that "the fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states." One may have the common law and trial by jury; another the civil law and trial by the court. But like diversities may also exist in different parts of the same state. The states frame their laws and organize their courts with some regard to local peculiarities and special needs, and this violates no constitutional requirement. To the same effect are *Hayes v. Missouri,* 120 *U. S.* 68; *Kentucky Railroad Tax Cases,* 115 *Id.* 321; 12 *Corp. Jur.* 1208, and cases cited.

And, although the fourteenth amendment guarantees equal rights, regardless of color, &c., and congress enacted drastic legislation to ensure compliance therewith, still it was held competent for a state, in virtue of its police power, to require

negroes and whites to occupy separate compartments in pas-senger cars on roads operating wholly within the state. *Plessy* v. *Ferguson,* 163 *U. S.* 537.

And, so, it was declared generally : "The methods by which justice is administered are subject to constant change in con-formity to the wishes of the citizens of the different states. On one side of a state line there may be a right to trial by jury, and on the other side no such right may exist, but the orderly procedure laid down in each state is "due process of law, for the fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies." *Caldwell* v. *Texas,* 137 *U. S.* 692.; *Iowa C. R. R.* v. *Iowa,* 160 *Id.* 389.

So, the inherent sovereign right of the state to enact leg-islation regulating or prohibiting the transportation of in-toxicating liquor within its borders, even though such legis-lation was not uniform with the act of congress known as the "Webb-Kenyon law," was recognized by the United States Su-preme Court in one of the last opinions written by Chief Jus-tice White. *Williams* v. *United States,* 41 *Sup. Ct. Rep.* 364.

When we approach the authorities of this state upon the subject of indictment and jury trial, it becomes apparent that there is practically an entire unanimity of view. Indeed, learned counsel upon the argument conceded the rule to be that as to those offences which, at the time of the adoption of our constitution of 1776, were triable without jury under the uniform practice of British law, the right of summary trial still persists, notwithstanding the constitutional guarantees of trial by jury, and the legislature may in its discretion deal with such cases in a summary manner.

In *McGear* v. *Woodruff,* 33 *N. J. L.* 213, Mr. Justice De-pue, dealing with an ordinance of the city of Bridgeton, which vested in the mayor the power of summarily trying offenders, and which it was contended was violative of the constitutional inhibition, declared: "By that section it was not intended to introduce trial by jury in cases where it did not exist before, but merely to preserve it inviolate in cases where it existed at the time of the adoption of the constitu-

tion. Prior to the adoption of the constitution of 1776 convictions before magistrates for petty criminal offences, and violations of police regulations, were of frequent occurrence, and were recognized as part of the law of England." To the same effect are *Johnson* v. *Barclay,* 16 *Id.* 1; *State* v. *Anderson,* 40 *Id.* 224; *Greely* v. *Passaic,* 42 *Id.* 87; *State* v. *Doty,* 32 *Id.* 403.

This statement of legal principle is universally recognized throughout the union as definitive and dispositive of the criticism here urged. *Murray* v. *H. L. & I. Co.,* 59 *U. S.* 272; *Walker* v. *Sauvinet,* 92 *Id.* 93; *Lawton* v. *Steele,* 152 *Id.* 133; *Mugler* v. *Kansas,* 123 *Id.* 206

The learned editor, in 16 *R. C. L.* 194, summarizes the judicial learning upon the subject, followed by a collocation of the cases, in this statement: "The constitutional right of trial by jury applies only to cases in which the prerogative existed at common law or was secured by statute at the time the constitution was adopted, and not in those cases where the right and the remedy with it are thereafter created by statute."

It is unnecessary to enter into a discussion for the purposes of this case as to whether the offence in question is in essence a crime of major or lesser magnitude or whether it is a crime at all.

Blackstone, in generically defining and distinguishing the word from "misdemeanors," says: "In common usage the word 'crimes' is made to denote such offences as are of a deeper and more atrocious dye, while smaller faults and omissions of less consequence are comprised under the gentler names of misdemeanors only." Book 4, page 4.

The legislature in this instance has deemed it expedient to create out of the act of violating this law the offence of disorderly conduct, and the legislative power in this respect not only cannot be gainsayed; but must be recognized as a consistent acknowledgment of legislative power and precedent. *Paul* v. *Gloucester, supra.*

Whether the legislature shall confide the power and confer the jurisdiction of dealing with offenders against a law enacted

in the exercise of the police power to a city magistrate, or to a police justice or a county court, is a matter in the legislative discretion. *Paul* v. *Gloucester, supra; State* v. *Conlin,* 27 *Vt.* 318.

Says Chief Justice Beasley in *State* v. *Anderson, supra:* "The offence of selling liquor without a license is purely a statutory offence. Independently of a prohibition by the legislature, such sale is neither immoral nor illegal, and the lawmaker, therefore, can put it under such control as may be thought best. Not being in its nature an indictable offence, it can be made punishable by a penalty without indictment." To the same effect are *State* v. *Lakewood Market Co.,* 84 *N. J. L.* 512; *State* v. *Rodgers,* 91 *Id.* 212; *Board of Health* v. *Rosenthal,* 67 *Id.* 216.

It becomes manifest, therefore, that neither indictment nor jury trial was requisite in the procedure prescribed by the legislature as legal *modus operandi* for dealing with this offence. This brings us to the inquiry whether as contended by the prosecutors the title of the act is constitutionally defective, in that it fails to express the legislative purpose as revealed by the entire enactment. As we have observed, the act under consideration is but part of an entire legislative result, indicated by various chapters, dealing with one subject at the same session, all of which we must judicially notice as *in pari materia* when dealing with any specific chapter upon the subject.

These enactments, it will be observed, manifest a legislative intent to deal with the subject of intoxicating liquors as an entirety, from every viewpoint, and neither legislator nor citizen could reasonably entertain any doubt, as to the legislative purpose, even if we discard from consideration matters of public interest which the judiciary are presumed to be conscious of, such as the nation-wide agitation upon the subject of state and national prohibition. *Ocean Beach Association* v. *Brinley,* 34 *N. J. Eq.* 438; 1 *Rice Ev.* 28.

The title of the act under review is "An act concerning intoxicating liquors used or to be used for beverage purposes." To the average mind, whether in the legislature or

in the ordinary walks of life, no doubt could be reasonably entertained that the legislature intended by this enactment to deal with the subject of intoxicating liquor, in so far as that commodity was then used, or was likely to be used, for beverage purposes. In that respect the object of the act under the requirement of the constitutional mandate was substantially and clearly expressed. Manifestly, in this instance, the title of the act is at least a conspicuous label, if not an index, indicative of the legislative purpose, and should suffice to meet the requirements of the constitution, for it is now settled under the repeated adjudications in this state that the *modus operandi* by which the legislative purpose is to be attained need not be included in the title to the act. *Moore* v. *Burdette,* 62 *N. J. L.* 163; *McMahon* v. *Riker,* 92 *Id.* 1; *Id.* 637; *Sawter* v. *Schoenthal,* 83 *Id.* 499.

When we contemplate the multitude of statutes containing the most generic titles which have been subjected to the criticism of this court, and received its imprimatur, such as acts relating to cities, villages, towns, banks, trust companies, elections, courts and roads, it would be difficult to perceive upon what principle deducible from the adjudications, this legislation may be singled out and condemned as offensive to the constitutional mandate.

An attack upon this legislation is directed against those provisions of the act relative to search and seizure. Probably, there is no method adopted for the practical administration of justice more historically offensive to the national sensibilities than the summary search and seizure of property; and so acutely was this fact obtruded upon the attention of the framers of our national and state constitutions that they felt called upon to deal with it entirely from the standpoint of public necessity in the prosecution of violations of the law. Therefore, it was, that while they recognized the necessity for such proceedings, they provided in the bill of rights that such searches and seizures should be neither arbitrary nor unreasonable, and such was the only limitation imposed.

The right to search and seizure is recognized by the sixth subdivision of article 1 of the state constitution, and the only

limitation there provided is that such proceedings shall not be "unreasonable." And it is provided that "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized."

The fourth amendment to the federal constitution is substantially similar. A critical examination of the provisions of this act, relative to searches and seizures, satisfies us that ample provision for the protection of the rights of the citizen is provided, so as to bring these provisions within the constitutional limitation that the procedure prescribed shall be not "unreasonable."

The act provides for searches and seizures with warrant and for a like procedure without warrant. In the first contingency the procedure is of a legal character, based upon affirmative proof of an existing violation, or upon probable cause for belief of an actual violation of the act. Paragraphs 57 and 71. The search and seizure is permitted under paragraphs 25 and 72, where the officer has reasonable ground or probable cause for believing that the act is being violated. Search of a private dwelling cannot take place except upon the oath of the affiant that he has personal knowledge of the unlawful sale of liquor therein.

In the light of these protective provisions, we deem a search and seizure made under such conditions as not unreasonable, and as based upon the elements of actual knowledge or of reasonable and probable cause. Questions of this character have received the attention of other jurisdictions quite generally, and the principle uniformly deducible from the adjudications is sufficiently and definitively stated in our own cases of *State v. Mausert,* 88 *N. J. L.* 286, and *Lane v. Pennsylvania Railroad,* 78 *Id.* 672.

In the latter case, Mr. Justice Trenchard, enunciating the opinion of the Court of Errors and Appeals, concisely says: "In cases of criminal prosecutions probable cause means reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinally

cautious man in the belief that the accused is guilty of the offence with which he is charged."

An inquiry is presented as to the affirmative power of the legislature in the enforcement of its police power to provide for the forfeiture *pro tempore,* or even the destruction, if deemed necessary for the public health and welfare, of any confessedly illegal instrumentality used in the perpetration of the offence. It must suffice to remark upon that inquiry that the question is not *res novo* in either state or in the federal jurisdiction. *Mugler* v. *Kansas,* 123 *U. S.* 206; *Slaughter House Cases, supra; Goldsmith* v. *Grant Co.,* 254 *U. S.* 505, and the recent case *Burdeau* v. *McDowell* (*United States Supreme Court*), 41 *Sup. Ct. Rep.* 574.

This power of the legislature has been sustained in this state in *State* v. *Lakewood Market Co., supra,* and *Haney* v. *Compton,* 36 *N. J. L.* 507.

The contention is also urged that the act in its thirty-seventh section creates a presumption against the defendant inconsistent with his constitutional rights. The section referred to is: "At any such trial, hearing or inquiry, or in any such proceeding, the liquor or liquors mentioned in paragraph A, section 2 of this act [alcohol, brandy, whiskey, rum, &c.] shall be presumed to be for beverage purposes, and to contain more than one-half of one per centum of alcohol by volume."

The legal effect of this legislative rule of evidence is to create a presumption upon the production of the prescribed liquid in the custody of the defendant, that the fluid was to be used for beverage purposes and that it contains a greater percentage of the alcoholic content than the law allows. The burden is thereby shifted to the defendant of proving (1) that it was not intended for beverage use, or (2) that it did not contain the illegal alcoholic content for beverage purposes.

The legislative power to deal with evidential rules, so long as the changes do not violate property or constitutional rights, is settled beyond reasonable controversy. *Cooley Const. Lim.* 409.

The exercise of this power in civil cases, involving the repeal of the common law doctrines of assumption of risk and

the fellow-servant rule have been sustained by the United States Supreme Court and by our Court of Errors and Appeals, and the *ratio decidendi* in those cases is equally applicable and dispositive of the contention raised here.

The question was presented in the recent case of *Street* v. *Lincoln Safe Deposit Co.*, 41 *Sup. Ct. Rep.* 31, where the Volstead act provided for a shifting of the burden of proof to the defendant by creating an evidential presumption against him where he was found in the possession of liquor, the Volstead act providing "that the possession of liquor by any person not legally permitted to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold," &c. That court passed upon the constitutional effect of the provision *sub silentio*, and dealt with the requirement as a legal provision under which the defendant might exculpate himself by proper proof. The practical and settled rule governing the inquiry is concisely stated in 10 *R. C. L.* 863, supported by a collection of the cases: "The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. So long as the legislature in prescribing rules of evidence in either civil or criminal cases leaves a party a fair opportunity to make his defence and to submit all the facts, it is difficult to perceive how its acts can be assailed on constitutional grounds. No person or corporation has a vested right in the rules of evidence."

The defendants who were tried and convicted were sentenced—one to the county jail and one to a county penitentiary—under the provisions of the forty-fourth section of the act, which provides that the magistrate upon conviction may sentence such disorderly person to "the workhouse, penitentiary or common jail of the county," and it is finally urged that the act is bad, in that it provides for confinement in the county jail or penitentiary.

Historically, the differentiation between these institutions is fully considered in *Virtue* v. *Freeholders*, 67 *N. J. L.* 139, and it is not unlikely that in an earlier day confinement in the workhouse rather than in either of the other institutions had its compensations. In some of the counties there is no distinc-

tion between the county jail and the penitentiary, and in others there would seem to be none between the penitentiary and the workhouse. Why it should be considered unconstitutional for the legislature to provide for confinement in the county jail or penitentiary in this class of offences is not made clear, for, like the rule applicable to evidence, it would seem to be entirely a matter for legislative discretion, under a policy of government that may change as the times change. *Slagway* v. *Riker,* 84 *Id.* 211.

In *State* v. *Ellis,* 26 *N. J. L.* 219, this court held that a sentence to the county jail, where the act authorizing the conviction provided for a sentence to the workhouse, could not be sustained, and, incidentally, this court in that case calls attention to the fact that at common law disorderly persons were sentenced to the county jail. To the same effect is *Fairbanks* v. *Sheridan,* 43 *Id.* 484.

This review of the constitutional questions involved in this legislation leads us to conclude that the act as an entirety constitutes a valid exercise of legislative power and should be sustained.

We have also examined the remaining questions raised and argued by the several prosecutors of these writs now under consideration and find no merit in them. We conclude that in numbers 412 and 345 the judgments must be affirmed, with costs, and in number 216 the writ of *certiorari* must be dismissed, with costs.