STATE OF NEW JERSEY v. MEYER C. ELLENSTEIN ET AL.

SAME v. HARRY S. REICHENSTEIN.

SAME v. JULES E. TEPPER.

SAME v. FRANK A. BOETTNER.

SAME v. FRANK A. BOETTNER ET AL.

SAME v. PEARCE R. FRANKLIN ET AL.

SAME v. PEARCE R. FRANKLIN AND WALTER T. FERRY.

SAME v. JACK H. LEHMAN.

SAME v. JOSEPH C. LIPPMAN ET AL.

SAME v. ANTHONY F. MINISI.

SAME v. MICHAEL SILVER.

SAME v. DOROTHY CHERNIN.

SAME v. IRVING FIELDMAN ET AL.

SAME v. REGINALD C. S. PARNELL ET AL.

SAME v. JOSEPH HEIMBERG ET AL.

SAME v. DAVID B. RASCHKOVER ET AL.

SAME v. WILLIAM F. YEOMANS, JR.

SAME v. JOHN J. BERRY.

SAME v. W. HOWARD DEMAREST.

SAME v. HAROLD J. McCABE.

Argued May 16, 1938—Decided November 15, 1938.

Before Justices CASE, DONGES and PORTER.

For the State of New Jersey, *Warren Dixon, Jr.,* special assistant attorney-general; *William A. Wachenfeld,* prosecutor of the pleas for Essex county; *Joseph E. Conlon,* first assistant prosecutor.

For Meyer C. Ellenstein, *John E. Toolan.*

For Jules E. Tepper, *Joseph C. Braelow.*

For Irving Fieldman, *John Drewen.*

For Pearce R. Franklin, *John W. McGeehan, Jr.*

For Frank A. Boettner, *Osborne, Cornish & Scheck.*

For Joseph Heimberg and David B. Raschkover, *Harold Simandl.*

For Anthony F. Minisi, *Ferdinand D. Masucci.*

For Dorothy Chernin et al., *Merritt Lane.*

For John J. Berry, *Arthur J. Connelly.*

For William F. Yeomans, Jr., *Congleton & McLaughlin (Richard J. Congleton).*

For Harold J. McCabe, *Carl Abruzzese.*

For Harry S. Reichenstein, *Bernard Devin.*

The opinion of the court was delivered by

CASE, J.  Forty indictments were found by an Essex county grand jury, most of them against officials of the city of Newark and all of them arising out of an investigation ordered by Mr. Justice Parker under the authority of chapter 3, *Pamph. L.* 1907, into alleged unlawful expenditures of the city of Newark.  The indictments are numbered 467 to 489, inclusive, and 496 to 512, inclusive, of the September term, 1937, Essex county grand jury.  Those indictments were brought into this court by a single writ of *certiorari* and are grouped under numerous titles with a like volume of case numbers; but all of the cases are argued under the listing of No. 213 May term, and we are therefore unable to distinguish the cases by the calendar listing.  The disposition will clearly appear by the indictment numbers.  The present status is that the numerous defendants, including three fictitious names, in whose behalf the writs were issued have, by the court's permission, withdrawn their pleas of not guilty for the purpose of moving to quash the indictments, and the motions to quash are now before us.  The rule by which this was done limits the grounds to which the motions may go and thus some of the reasons presented in the defendants' briefs, prepared before the rule was entered, become pointless.

Mr. Warren Dixon, Jr., a Supreme Court commissioner, was designated as the statutory "expert" to conduct the inves-

tigation. After he had completed the inquiry and rendered his report, he was appointed special assistant attorney-general to assist the prosecutor of the pleas of Essex county in prosecuting the matters criminally.

Mr. Justice Parker made the disclosures of the investigation the subject of a charge to the grand jury on October 15th, 1937, and in so doing made free use of and quoted at length from the report; indeed, it may be said that the charge was in part a cursory review, with running comments, of the high spots of the report which consisted of a book, approximating folio size of four hundred printed pages. A copy of the report was placed in the hands of each juryman. Later the justice supplemented his oral charge by a brief writing communicated to the grand jury by Mr. Dixon and hereinafter discussed.

The defendants contend that the charge of October 15th was productive of bias and prejudice in the minds of the jurors. But they submit no proof that the jurors, in coming to their findings, were influenced by bias or prejudice, either from this or any other source; and as the allegation is one of fact it is for the defendants, who advance the assertion, to prove it. Particularly is fault found with the references made to the report and with the recommendation that the jurymen read the report "and thereby get the atmosphere of the situation *as a basis for the inquiry that you should yourselves make to the end that parties appearing to be guilty of crime be brought before the bar of the court for trial."* We have inserted italics to emphasize the thought, obvious it would seem even without emphasis, that the jurymen should use the lengthy report with its multitude of incidents merely as their *agenda,* the memoranda of transactions which they should themselves investigate. The report was a court record, the epitome of many months of inquiry into allegedly unlawful and corrupt expenditures of the public funds of the city of Newark, conducted under the supervision of the Supreme Court justice who was making the charge and in accordance with the statute passed by the legislature. The charge made clear that neither the report nor the evidence

taken by the commissioner would support an indictment and that the jury was to make direct investigation: "In one sense it is unfortunate that neither the report of the commissioner nor the evidence taken by him is directly available to support indictments. So deliberate are the processes of the law, and so jealous is it of the rights of an accused party, that an indictment must rest on legal evidence submitted to or procured by the grand jury itself. * * * The transactions of the bureau should have a thorough investigation *at your hands.* * * * Upon reading the commissioner's report *you will, no doubt, desire to investigate the matter fully.* * * * The atmosphere is one of conspiracy and bribery, and *the case should be thoroughly investigated* * * *.*" There is reason to believe that the jury did not regard the report as evidential inasmuch as it made request, which was complied with, to Mr. Justice Parker for special instructions regarding the use as proofs of stenographic notes of testimony taken before Mr. Dixon in the course of his investigation. Further, the rule in this state is that the question whether the evidence before a grand jury was competent or incompetent is, saving misconduct, irrelevant on a motion to quash. *State* v. *Dayton,* 23 *N. J. L.* 49; *State* v. *Borg,* 8 *N. J. Mis. R.* 349. The citation by defendants of *Hale* v. *Kentucky,* 82 *Sup. Ct. Adv. Op. Law Ed. No.* 14, *p.* 744, and other federal decisions leads us to note at this point and also as bearing upon the discretionary character of a motion to quash, discussed *infra,* that not only is no misconduct charged against the jurors, but no fault is found either with the call for or the composition of the grand jury. So far as appears or is claimed, there is no taint in the drawing, swearing or membership of that body.

As a further instance of the alleged tendency of the charge to arouse bias the defendants cite the court's reference to an article shortly theretofore printed in a weekly journal under the caption "Why Not the Grand Jury?" the purport of which was that a grand jury "can dig into anything," and could and should be a very useful agency in uprooting crime. So, speaking generally of criminal matters within the county,

the grand jury can; and so it could and should be. Bias against crime should not be misinterpreted as bias against a suspect. The article was of nation-wide scope, did not mention and had no reference to the Newark situation. The justice, as we grasp the significance of the charge, thought that if the proofs were as the report indicated the grand jury should find some indictments; but for clarity of pronouncement let us omit the contingency and assume that he considered that there should be indictments and that he put that thought over to the jury. That, in our opinion, does not invalidate the indictments. Freedom of determination was not taken from the jury. There is not, and in the interest of law and order there ought not to be, greater limitation of comment upon the court in addressing a grand jury than in addressing a petit jury at the trial of a criminal indictment. Our trial judges are allowed wide latitude in commenting upon the evidence to the jury following criminal as well as civil trials. It was held by the Court of Errors and Appeals in *State* v. *Overton*, 85 *N. J. L.* 287, 294: "Counsel assert that 'a trial judge should not intimate any opinion upon the facts.' This rule does obtain in some jurisdictions, but it is not, and we think never has been, the rule in this state." The opinion further states that "it is always the right, and often the duty, of a trial judge to comment on the evidence and give the jury his impressions of its weight and value, and such comment is not assignable for error, so long as the ultimate decision on disputed facts is plainly left to the jury." See, also, *State* v. *Hauptmann*, 115 *Id.* 412 (at *pp.* 429 *et seq.*), for a review of the cases and a restatement of the rule. *State* v. *Seifert*, 85 *Id.* 104; *affirmed*, 86 *Id.* 706, contains perhaps the most positive judicial comment of any of the criminal charges taken up on appeal. The portion of the charge covered by the assignment in that case closed with these words: "Under the law as I have given it to you he (viz., the defendant) stands here without any justification and is guilty of assault and battery. It is your duty to find him guilty." It was held here and subsequently in the Court of Errors and Appeals that the language did not constitute

a direction, that it was an expression of opinion and was within judicial privilege and duty.

The court's charge on the question of the report and the action of the assistant attorney-general in handing copies of the report to the members of the grand jury are not adequate grounds for quashing.

We may here consider the point that the defendants were harmed in that the supplemental charge to the grand jury was communicated to the grand jury in a writing carried by Mr. Dixon rather than by the justice orally. It is not contended that the charge was not communicated to the grand jury or that it was not communicated precisely as written. A question is parenthetically inserted regarding the soundness of some of the legal propositions there stated. We consider that the charge is in all essentials correct, but that, whether so or not, it may not, in that aspect, be made a sustaining ground for the present motions. The substantial question is whether a court instruction may be communicated to a grand jury in writing. We do not commend that procedure, but we are informed of none of the causative incidents, and we believe, and find, that the procedure does not *per se* invalidate an indictment subsequently returned by the grand jury. *State* v. *Duvel,* 4 *N. J. Mis. R.* 719; *affirmed,* 103 *N. J. L.* 715, is relied upon by defendants. That case came up after judgment of conviction. While the trial jury was sitting upon its verdict it made request for further instructions. The instructions were telephoned by the judge to the clerk who took the same down in writing and delivered the writing to the jury. This court, upon appeal, determined that that was ground for reversal. The facts are of sufficient similarity to have made the determination thereon a pertinent precedent had the instant case been a review of a conviction. But a grand jury room is not the forum for the trial of an issue. The elements which go to constitute an accusation are essentially different from those which combine in a conviction. An accusation proves nothing, carries no element of guilt. In no degree does it take from the accused his presumption of innocence. The state must proceed. If it does

not, a rule of *non prosequi* to the indictment may be had. If it does, it labors under the burden of proving the accused guilty beyond a reasonable doubt. If a conviction follows then the accused has his appeal. The accused is given comprehensive protection against persecution or unlawful arrest or unjustified conviction. But society will suffer if its right to accuse is not kept measurably free of impeding technicalities. The decision in the Duvel case is not, in our opinion, pertinent to the present issue.

We find that there is nothing presented in the points against either the main or the supplemental charge upon which the motions to quash should prevail.

It is said that Thomas M. James was present when the grand jury was deliberating, that he was not authorized to be present and that the indictments were thereby vitiated. If the fact of presence is to be given the suggested baleful quality, it must, we think, be resolved into terms of impropriety by the grand jury. Of that we find no evidence. On the contrary, the proceeding seems to have been entirely regular. Under chapter 409, (*Pamph. L.* 1912; *Rev. Stat.* 1937, 2:89-5), James was appointed to be assistant to the clerk of the grand jury. Under that designation he was authorized to attend the sessions of the grand jury, when requested by it, and take minutes of the evidence there adduced. Defendants seek to attack the validity of the appointment; but they may not make that collateral attack in this suit. James was a *de facto* officer with colorable title, and that is enough here. *State* v. *Zeller,* 83 *N. J. L.* 666; *State* v. *Carlino,* 98 *Id.* 48.

The indictments for conspiracy arising out of certain land transactions are under attack. The substance of the charging part of these indictments is as follows:

"On or about May 28th, 1935, and for a long period of time thereafter, did * * * fraudulently, corruptly, * * * knowingly and unlawfully combine, unite, confederate, conspire, and bind themselves by agreement, or otherwise, between and among themselves, and with evil intent, to * * * cheat and defraud the city of Newark of a large sum of money

\* \* \* by fraudulently, corruptly, knowingly and unlawfully causing to be paid \* \* \* for the alleged purchase of purported interest in certain lands \* \* \* and premises located in the Newark meadows \* \* \* more particularly hereinafter described \* \* \* $190,535.86, purported to be paid to said (certain named defendants) well knowing that the said (named defendants) were not, and no other person \* \* \* was, \* \* \* justly or lawfully entitled to said sum of money, or any other like sum. \* \* \*."

It is said that that language charges no crime. It charges that the defendants united in a fraudulent combination with the object of cheating the city of Newark of a large sum of money by knowingly, corruptly and unlawfully causing $190,535.86 to be paid to certain persons who the defendants knew were not entitled to that or any like sum. It is said that while the indictments charge the defendants with combining to cheat the city they do not specify the means. A charge of conspiracy to cheat a municipality imports an indictable offense on the ground of the public character of the corporation; and a general charge in an indictment for such a conspiracy is sufficient without setting forth the means to be used. *State* v. *Young,* 37 *N. J. L.* 184. A pertinent rule stated at least as early as *State* v. *Norton,* 23 *Id.* 33, 44, and restated as recently as *State* v. *Continental Purchasing Co., Inc.,* 119 *Id.* 257; *affirmed,* 121 *Id.* 76, is that all such acts as have the necessary tendency to prejudice the public or to injure or oppress individuals by unjustly subjecting them to the power of the conspirators are sufficiently tainted with the quality of unlawfulness to satisfy the requirements as to conspiracy. The means, however, is stated in these indictments, namely, the fraudulent payment to named persons as the alleged purchase price of interests in specifically described real estate of an amount of money to which, or to any amount in similitude of which, neither those nor any other persons were entitled. That, in our opinion, is a direct, definite and particular statement of the means sufficient to meet the requirements of *Wood* v. *State,* 47 *Id.* 461; *Madden* v. *State,* 57 *Id.* 324; *State* v. *Borg,* 9 *N. J. Mis. R.* 59, and

the remaining cases of this jurisdiction cited by defendants. If an indictment presents with reasonable certainty all the facts necessary to render the offense judicially apparent, it should not be quashed. *Haase* v. *State,* 53 *N. J. L.* 34; *Minochian* v. *Paterson,* 105 *N. J. L.* 73; *affirmed,* 106 *Id.* 436.

It is next said that the conspiracy indictments are defective because they contain no validly pleaded overt act, and the argument turns largely upon the use by the pleader of the words "alleged," "allegedly," "purported" and "purportedly," an illustrative phrase being that the city commissioners "purportedly intended" and so on. The obvious significance of the words is that the commissioners "made the pretense of intending." Like observation may be made of the remaining criticisms of the wording of the clauses on overt acts. Defendants' brief argues that "these things * * * allege— though invalidly and without legal effect—guilty knowledge * * *." We attribute validity and legal effect to them in sufficient measure to sustain the indictments. Overt acts do not constitute the crime (*State* v. *Continental Purchasing Co., Inc., supra*), and need not be enacted by all or any specified number of the conspirators. The unlawful agreement is the gist of the conspiracy; it does not, however, become the basis of an indictable offense until one of the parties takes a step in furtherance of the execution; one such step is sufficient, even if the object of the conspiracy be not attained. *State* v. *Hemmendinger,* 100 *N. J. L.* 234; *affirmed,* 101 *Id.* 417. It is not practicable for us to discuss the points and subdivision separately; but we find sufficient support in the allegations of overt acts to support each indictment.

The statutory provision (2 *Comp. Stat. p.* 1757, *pl.* 37; *Rev. Stat.* 1937, 2:119-1) is that "any two or more persons who shall combine, unite, confederate, conspire or bind themselves by oath, covenant, agreement or other alliance" to do certain acts shall be guilty of a conspiracy. The indictments charge that the defendants did "combine, unite, confederate and conspire and bind themselves by agreement or otherwise." It is contended that the use of the words "or otherwise" rather than "or other alliance" is fatal. We think not. The

words "or otherwise" are to be construed as *ejusdem generis* with "agreement" and really limit rather than enlarge the application of the statute. "It seems impossible to ascribe to the other words 'combine, confederate, conspire' any meaning other than that the defendants mutually engaged to accomplish the purposes charged." *State* v. *Nugent, 77 N. J. L.* 84.

It is next said that the indictments are multifarious and in support it is argued that the several overt acts set up different crimes with different participants. Each indictment alleges a single crime, that of conspiracy to cheat the city of Newark by means of fraudulent payments with respect to a named real estate transaction. The fact that an overt act, committed by one or more of the conspirators in execution of the conspiracy, in and of itself constitutes a distinct crime does not modify the principle that the confederacy is a single act and that it may include in its purpose any number of particulars. *State* v. *Continental Purchasing Co., Inc., supra; State* v. *Nugent, supra.*

It is further said that fictitious names are used without the allegation that the true names of co-conspirators charged are not known to the grand jury. This point is based upon what we deem to be a mistaken conception of the significance of the language used. The relevant phrase reads: "John Doe, Richard Roe and Jane Doe, together with other evil disposed persons unknown to this grand inquest." The placing of a comma after the word "persons" would have made the meaning unmistakable. We think it is sufficiently clear that the allegation of ignorance of identity is intended to include the persons fictitiously named.

Defendants next contend that the conspiracy indictments charge no crime within the period of limitations. The indictments charge that the defendants "on or about May twenty-eighth, Nineteen Hundred thirty-five, and for a long period of time thereafter, did dis-honestly," &c. May 28th, 1935, was beyond the period of limitations; but each indictment contains at least one allegation of an overt act which occurred within that statutory period, and the question is whether that saves the indictment. The New Jersey cases cited by defend-

ants are *State* v. *Unsworth*, 84 *N. J. L.* 22, and *State* v. *Gregory*, 93 *Id.* 205. We think that these cases do not have the force attributed to them and that the Gregory case is clearly *contra* appellants' argument. The ·Unsworth case, as cited, was decided in this court. However, there was an appeal and while the appeal was followed by an affirmance it was upon an opinion, 85 *Id.* 237, which rejected the reasoning below, and neither of the opinions supports the defendants' argument in the instant case. Mr. Justice Swayze said in the Court of Errors and Appeals that "in an indictment for conspiracy under a statute like ours which makes an overt act necessary to complete the offense, it is enough if there is one overt act within two years."

It is further urged that the indictments are defective in that many of the charges of overt acts do not disclose the place where the overt act is alleged to have occurred. No authority is cited in support of the necessity for such an allegation. The indictments lay the venue of the alleged crime within the county of Essex and within the jurisdiction of the court. The indictments enumerate various overt acts, but other overt acts may be proved. The fact that no *locus* is contained in the indictments for such other acts will not forestall proof of them and do not render the indictments void. We think that the omission is not fatal.

There are a group of indictments against the corporation counsel and the assistant corporation counsel. Two of the indictments are against these officers jointly, and two are against one and two are against the other. An answer to most of the criticisms first expressed is that the indictments are, as we understand them, for malfeasance and not for non-feasance. The officers are charged with duties, and it is said that the duties are charged in language that is dissertative rather than legal; but the accusation charges in legal language that these high law officers of the city "unlawfully, corruptly and willfully did advise the Board of Commissioners * * * that the City of Newark was legally obligated to pay [naming the persons] large sums of money in connection with the purchase * * * of their alleged

respective interests in * * * land * * * well knowing that the said large sums of money were grossly exorbitant, excessive and unwarranted and did not constitute a legal, proper and justifiable expenditure of the funds of the City of Newark." If the corporation counsel, with the imputed knowledge, did what he is here accused of doing, it seems to us that he committed a malfeasance in office. So likewise of the assistant corporation counsel. In view of the close identity in the duties charged against them, and in the responsibilities, where a duty is assumed, of these two men, we see no impropriety in the joining of them, in a single indictment, for an offense that they are charged with committing jointly. *State* v. *Seidman & Fischman,* 107 *N. J. L.* 204; *affirmed,* 108 *Id.* 550. See, also, *State* v. *Preiskel,* 13 *N. J. Mis. R.* 736; *affirmed,* 117 *N. J. L.* 150, and *State* v. *Walter et al.,* 14 *N. J. Mis. R.* 547; *affirmed,* 117 *N. J. L.* 547.

What we have said as to the character of the indictments against the law officers, namely, that they are for malfeasance in office and that the acts, if they transpired as charged, constitute that offense, apply equally to the indictments against the members of the board of commissioners for the language is similar.

There are two indictments against Harry S. Reichenstein, city clerk of the city of Newark, for nonfeasance in office. Discussion of one will suffice for both. The usual clerical duties of keeping and preserving the records are charged against him and also the absolute duty "of disclosing to said Board of Commissioners the contents of any such minutes or other documents or records * * * tending to or serving as a means of protecting the rights and interests of the said City of Newark in respect of the expenditure of any money or funds of the said City of Newark * * *." The crime charged is that on December 4th, 1935, Reichenstein; "disregarding the duties so by law enjoined upon him, did * * * unlawfully, corruptly and willfully neglect and omit to perform the duties so by law enjoined upon him * * * did then and there unlawfully and willfully fail to use and exercise and cause to be used and exercised all proper and

reasonable and effective means and all means within his power as City Clerk of the City of Newark aforesaid to present to said Board of Commissioners of said City of Newark divers papers, documents and records of said City of Newark then and there in the possession of said Harry S. Reichenstein as such public official aforesaid which said papers, documents and records would protect or would serve as a means of protecting the rights and interests of the said City of Newark in respect of the expenditure of any money or funds of the said City of Newark and to disclose to said Board of Commissioners the contents of divers papers, documents and records which would protect or would serve as a means of protecting the rights and interests of the said City of Newark in respect to the expenditure of money and funds of the said City of Newark." We shall assume, although we do not hold, that Reichenstein, as city clerk, was under the duty to disclose in the fullness charged in the indictment; but we are of the opinion that the indictment does not sufficiently apprise the defendant of the nature and cause of the accusation or crime sought to be laid against him. Except for the date of December 4th, 1935, there is nothing but the most general and sweeping language. Was the board in session on that day? What was the subject-matter to which the alleged omissions were relevant? What was the transaction or what were the transactions with respect to which the defendant was derelict? It is to be inferred that in a municipality of the size and background of the city of Newark the files of the city clerk contain a mass of records and documents. What papers, documents or records should have been presented? Were they, and all of them, unknown to the grand inquest? If known, why were they not specified? And if unknown, why was not that lack of knowledge stated? Was it not possible for at least one definite and identifiable incident to be named? An indictment grounded in a definitive statute should be so framed that it will, upon inspection, disclose not merely what nature of crime but what particular crime was intended to be charged. *State* v. *Allgor*, 78 *N. J. L.* 313; *State* v. *Schmid*, 57 *Id.* 625. We think that a defendant

should not be compelled to plead to so vague a charge of failing to perform the duties of public office. If a plea of guilty were entered, no information of the actual offense would be carried by the pleadings to a sentencing court and no support afforded for a plea of *autrefois convict* in the event of a subsequent prosecution arising out of the same state of facts. *State* v. *Borg, supra.* The indictments, numbered 488 and 489, will be quashed for uncertainty.

Pearce R. Franklin, a member of the board of commissioners, moved specially against indictments Nos. 496, 497, 498 and 499. The first two are against Mr. Franklin and his secretary, Walter T. Ferry, for conspiracy, and the latter two are against Mr. Franklin alone. They all have to do with alleged violations of section 1, article XI of the Home Rule act as amended by chapter 137, *Pamph. L.* 1925. The statutory provision is that "no municipality shall enter into any contract for the doing of any work or for the furnishing of any materials, supplies or labor, the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the said contract for the doing of said work or the furnishing of such materials, supplies or labor, to the lowest responsible bidder; * * *;" to which are appended several saving clauses which do not bear upon our view of the issues. The conspiracy charged is that Mr. Franklin and Mr. Ferry corruptly agreed to expend, authorize and cause to be expended the city funds in certain repair operations in excess of one thousand dollars without public advertisement having been made for the letting of any contract to supply materials or labor in connection with the said repairs and the awarding of the contract therefor to the lowest bidder. The indictments against Mr. Franklin individually are for malfeasance in office and have their essence in the charge that as a member of the board of commissioners and director of the department of public works he corruptly expended or caused to be expended the funds of the city for the doing of work and the furnishing of materials, supplies and labor for repairs and alterations for an amount

in excess of $12,000 without the board of commissioners having first publicly advertised for bids and having awarded contract for the doing of said work and the furnishing of such materials, supplies and labor to the lowest responsible bidder. It will be observed that the statute, which is directed toward civic administration and is not a part of or in the nature of a crimes act, forbids a municipality to enter into a contract except upon the conditions named. The indictments do not charge the making of a contract either contrary to the provisions of the statute or otherwise; they charge that money was paid for labor and materials without public advertisement for bids and the making of an award to and a contract with the lowest bidder. The questions here raised were decided by this court in *State* v. *Kern*, 51 *N. J. L.* 259, opinion by Mr. Justice Magie. That case arose in Jersey City which, by its charter, was forbidden to enter into a contract for the doing of work except after due advertisement and award. Members of the board of public works were subjected to several indictments, one of which charged the making of a contract for cleaning the city streets without first publicly advertising for bids, and another charged that the defendants corruptly paid, or caused to be paid, $12,734 of city money for work done without previous advertisement. The one was sustained; and the other was quashed upon the ground that the paying for work was not *per se* a breach of duty arising out of a statute which went only to the making of a contract. No irregularity is charged in the instant case other than that already mentioned. It is not said that the work and materials were unnecessary or that they were defective or that they were paid for at unreasonably high prices. The four indictments under review will be quashed.

Indictment No. 502 charges false swearing against John J. Berry. The indictment is framed by setting forth contradictory statements made by Berry under oath and charging that the accused did willfully swear falsely in that one or the other of the contradictory statements was false. The offense here charged and the manner of pleading it are concededly within the provisions of chapter 286, *Pamph. L.* 1935.

The argument is that by the common law, in effect at the adoption of our constitution, an allegation in the disjunctive, or alternative, rendered the indictment invalid, that consequently that legal concept became imbedded in our constitutional law and that the legislature in enacting the cited statute transgressed art. I, subsection 8 of the constitution which provides that "in all criminal prosecutions the accused shall have the right * * * to be informed of the nature and cause of the accusation * * *" and also subsection 9 which provides that "no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury * * *." The contention is that the indictment is bad because the statute upon which it rests is unconstitutional and that the statute is unconstitutional because (section 2) it authorizes the accusation to be pleaded in the alternative wherein it violates the ancient rule and therefore is not an indictment within the meaning of the constitution. The indictment is not, we think, disjunctive or in the alternative in the sense argued. The classical instances to which we are referred are that it could not be lawfully charged against A that he murdered B or caused B to be murdered, or that he murdered or wounded B, or that he forged an instrument or caused it to be forged, or that he erected a nuisance or caused it to be erected. But the illustrations do not carry through; Berry is not disjunctively charged with one or another crime; he is definitely and clearly charged with the single offense of false swearing. He is accurately informed of precisely what he is to meet. We know of no inhibition against the authority of the legislature to declare that it shall be a crime for a man willfully and under oath to make statements so diametrically opposite that one must of necessity be false, and that the accusation may be made by setting forth the contradictory statements and alleging that one or the other, without specifying which, is false. That is substantially what the legislature has said in the present statute, directly requiring, however, that the jury shall be satisfied beyond a reasonable doubt not only of the falsity but of the willfulness of it. We consider that the underlying

purpose is both clear and rational. The statute leaves the defendant under no uncertainty as to that with which he is charged. It does not shift the burden of proof to him and it does not deprive him of any reasonable opportunity for defense. If it be that the statute designates the legal effect to flow from the proof of the contradictory statements, there is precedent, as, *e. g.,* chapter 72, *Pamph. L.* 1919 (*R. S. 1937,* 2:134-18); the "Bad Check" statute (*State* v. *Parsons,* 6 *N. J. Mis. R.* 76; *affirmed,* 105 *N. J. L.* 253), wherein the drawing of the check is made *prima facie* evidence of intent to defraud.

We conclude that the 1935 statute, *supra,* is not unconstitutional for any of the reasons presented and that the motion against the Berry indictment should be denied.

Harold J. McCabe moves to quash indictment No. 504, which charges him with false swearing under section 1 of chapter 286, *Pamph. L.* 1935, *supra.* So much of the argument as is directed against the constitutionality of section 2 of the statute need not be considered for two reasons: (1) section 2 is severable and does not bear upon the instant indictment; (2) we have considered section 2, *supra,* and found it constitutional.

Section 1 of the statute provides that "Any person * * * who shall willfully swear falsely before any person authorized by virtue of any provision of law of this state to administer an oath and acting within his authority, shall be guilty of false swearing."

The indictment recites the summary investigation, the appointment of Mr. Dixon, the conducting of hearings by him under the statute, his authority to administer oaths therein and the actual swearing of McCabe and charges that McCabe being so sworn to tell the truth did falsely and willfully swear in substance and effect that he had assisted, aided or helped one John J. Berry in preparing certain appraisals of property known as the Perry property, in the city of Newark, which appraisals were signed and submitted by the said John J. Berry to the board of commissioners of the city of Newark, whereas, in truth and fact, as he, the said McCabe, then knew, he, the said McCabe, had not assisted, &c.

The offense of false swearing is made a misdemeanor. It is not, and does not replace or obliterate, the offense of perjury, which is a high misdemeanor. The two criminal derelictions go back to the common law and have statutory existence in many jurisdictions. Statutory perjury and statutory false swearing frequently differ in varying respects from the common law offenses of the same names. But there appears to be a quite general distinction between perjury and false swearing in these respects, that the proceeding in which perjury occurs must, in some degree, be judicial in character (Conf. *Stale* v. *Daylon, supra*) and the matter counted upon must be material to the issue (*Gordon* v. *State,* 48 *N. J. L.* 611; *State* v. *Voorhis,* 52 *Id.* 351), whereas in false swearing the proceeding need not be judicial and the matter sworn to need not be material (see 48 *C. J., tit. "Perjury,"* 822, ¶¶ 2, 3). Without undertaking to follow such modifications as have been worked by statute and the cases with respect to perjury, we state our conclusion that under the statute cited, *supra,* false swearing need not occur in a judicial proceeding and the matter need not be material.

We are further of the opinion that the indictment informs the defendant, sufficiently for the disposition of the pending motion, of the nature and cause of the accusation against him, that it fully charges a misdemeanor within the definition of the statute and that a judgment may be rendered on it.

It is finally urged by the defendant McCabe that the 1935 statute is unenforceable and therefore unconstitutional in that it would permit the prosecution of a defendant for swearing falsely in any extra judicial proceeding to any matter which is in nowise material in such proceeding. Unenforceability is not a constitutional question. We are cited to no authority holding or stating the view that the legislature may not in its wisdom do that of which the defendant complains; and our understanding is that it may.

The motion will be denied.

It is appropriate to say, not only of the last mentioned motion, but generally of the motions to quash, that the granting of such a motion is a matter of judicial discretion and

not of right. The court is always loath to quash an indictment except on the plainest ground. *State* v. *Acton,* 9 *N. J. Mis. R.* 55. It was said by Chief Justice Green in *State* v. *Dayton, supra,* that "where the facts charged in the indictment clearly constitute no crime; where the court in which the indictment is found have no jurisdiction of the offense; where it appears upon the face of the indictment that the prosecution is barred by lapse of time, or where, for any cause, it is manifest that no judgment can be rendered on the indictment, there is obvious propriety in not putting the defendant to the expense and vexation of a trial. But when the exception is purely technical in nowise affecting the merits of the controversy, there would seem to be no good reason why the court should exercise its discretionary power in aid of the defendant." A learned review of the intervening cases and restatement of the rule may be found in *State* v. *Riggs,* 92 *N. J. L.* 575, written for the Court of Errors and Appeals. A recent holding in this court was *State* v. *Davidson,* 116 *Id.* 325.

Lastly, we have to consider the separate motion on behalf of William F. Yeomans to quash indictments Nos. 500 and 501 for malfeasance and misconduct in office. Yeomans was a member of the board of assessments for local improvements of the city of Newark and as such was an officer and employe of the city. He is charged with receiving to his own use the respective sums of $833.29, $833.29, $2,436.94 and $2,436.94 from premiums on contracts of indemnification paid by the city in the amounts of $3,204.58 and $3,204.58 to the Insurance Company of the State of Pennsylvania and of $17,424.72 and $17,424.72 to the Maryland Casualty Company. The statutory prohibition contrary to which Yeomans is said to have received these payments is section 7 of the Walsh act as amended, chapter 221, *Pamph. L.* 1911 (2 *Cum. Supp. Comp. Stat., p.* 2469, § **136-19)—"No officer or employe. elected or appointed in any such city, shall be interested, directly or indirectly, in any contract or job for work or materials, or the profits thereof, or services to be furnished or performed for the city * * *." The motion, except as

it relies upon arguments made on behalf of the defendants generally, rests upon the contention that the statute does not cover an insurance contract. It is said that the statute was intended to prevent the bribing of city employes and officials. We are given no foundation for that statement. Quite as much, we are inclined to think, is it to prevent graft, meaning by that the taking advantage of public office to acquire perquisites not anticipated by law.

The question of whether contracts or policies of insurance are within a ban of that general nature was considered by this court in *State* v. *Ruffu,* 8 *N. J. Mis. R.* 392. Mr. Ruffu was mayor of Atlantic City and was indicted *inter alia* on an accusation that he was a party to agreements and contracts providing for the writing of certain specific insurance policies for the city. The indictment grounded in section 32 of the Crimes act as amended, *Pamph. L.* 1907, *p.* 292, which provided that "Any member of any * * * board of commissioners * * * who shall be * * * a party to any contract or agreement, either as principal or surety, between the * * * city * * * and any other party, or who shall be directly or indirectly interested in furnishing any goods, chattels, supplies or property of any kind whatsoever to or for the * * * city * * * the contract or agreement for which is made or the expense or consideration of which is paid by the board * * * of which such member is a part, shall be guilty of a misdemeanor." It was said in the opinion that "the language of section 32 of the Crimes act is very broad and was doubtless intended to be all inclusive. The distinction between prohibiting the furnishing of materials and supplies of any kind whatsoever and the furnishing of an insurance policy is not too obvious. A policy of insurance is usually regarded as a document containing the terms of contract between an insurance company and the insured. Of course, every lawyer is aware of the fact that in the strict legal sense the policy gives rise to certain rights in action but as a physical document it has also an existence under the law. It may very well be that it falls within the legislative classification of property and supplies which a city commissioner may

not be directly or indirectly interested in furnishing to the city of which he is an officer. We do not feel that the indictment is so clearly and so plainly defective that this court can grant the motion." The opinion quotes with approval from *State* v. *Johnson,* 82 *N. J. L.* 330, as follows: "It does not appear to us that it is so manifest that no judgment can be rendered on this indictment that it ought to be quashed, and we prefer to follow the rule laid down in *Proctor* v. *State,* 55 *Id.* 472, that the discretion to quash an indictment on motion will not be exercised unless upon the clearest and plainest ground, but the defendant will be left to a demurrer, motion in arrest of judgment or writ of error." The language of the statute before us and of the one before this court in the Ruffu case are sufficiently alike to make that decision a pertinent precedent. The motion will be denied.

The result is that the motions to quash indictments numbered 488, 489, 496, 497, 498 and 499 will be granted. The remaining motions will be denied, and the indictments will be remitted to the Essex County Court of Oyer and Terminer, there to be proceeded with according to law. No costs.