603 A.2d 928

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
BRUCE ANDERSON, DEFENDANT–APPELLANT.

Argued March 26, 1991—Decided March 16, 1992.

*Sonia G. Wagner,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*William F. Lamb,* First Assistant Prosecutor, argued the cause for respondent (*Alan A. Rockoff,* Middlesex County Prosecutor, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

When called on to apply a long-established rule of law, courts sometimes become afflicted with a certain inertia. The resultant ennui can blind courts to the desirability of reassessing the rule's value and underlying rationale. This appeal is centered on just such a long-established and essentially unchallenged rule. The vast majority of jurisdictions, including New Jersey,

have faithfully held that the question of materiality in a prosecution for perjury is one to be decided by the judge rather than the jury. *See* Annotation, *Materiality of Testimony Forming Basis of Perjury Charge as Question for Court or Jury in State Trial,* 37 *A.L.R.*4th 948, 951 (1985 & Supp.1990). Many states, again including New Jersey, have codified that rule in their statutes or rules of court. See, *e.g., N.J.S.A.* 2C:28–1 (the perjury statute). What those many jurisdictions have not done, however, is scrutinize the reasoning behind the rule.

■ The few jurisdictions that have undertaken a fresh examination have concluded that the longstanding rule is fundamentally flawed, its foundation without footings. *See United States v. Taylor,* 693 *F.Supp.* 828 (N.D.Cal.1988), *appeal dismissed,* 881 *F.*2d 840 (9th Cir.1989); *Commonwealth v. McDuffee,* 379 *Mass.* 353, 398 *N.E.*2d 463 (1979); *People v. Clemente,* 285 *App.Div.* 258, 136 *N.Y.S.*2d 202 (1954), *aff'd,* 309 *N.Y.* 890, 131 *N.E.*2d 294 (1955); *see also People v. Hedgecock,* 51 *Cal.*3d 395, 272 *Cal.Rptr.* 803, 795 *P.*2d 1260 (1990) (holding that materiality is an issue for the jury in perjury prosecution based on errors or omissions in disclosure statements required by the Political Reform Act). *But see State v. Sands,* 123 *N.H.* 570, 467 *A.*2d 202, 215–18 (1983) (concluding that materiality involves complex relationship between alleged false statements and underlying proceeding and is therefore question of law). Having reexamined the rule ourselves, we conclude that the provision in *N.J.S.A.* 2C:28–1b declaring materiality to be a question of law irreconcilably conflicts with the constitutional right of an accused to have a jury determine the existence beyond a reasonable doubt of each essential element of a crime before he or she is convicted. See *State v. Ingenito,* 87 *N.J.* 204, 217, 432 *A.*2d 912 (1981). Materiality is an element of the crime of perjury. As such, we presume that its proof beyond a reasonable doubt must be determined by the trier of fact. *Ibid.* Because we can discern no compelling reason to withdraw from the jury the determination of materiality, we hold that the provision in *N.J.S.A.* 2C:28–1b declaring that determination to

be a question of law violates the New Jersey Constitution. We also conclude that the failure to submit materiality to the jury cannot be considered harmless under the circumstances of this case, wherefore we vacate defendant's conviction for perjury and remand the cause to the Law Division.

I

This case arises from defendant's testimony during the November 1986 capital-murder trial of his cousin, Billy Gilbert Smith. Smith had been charged with the murder of Dupree Mosley, a bystander to a dispute between Smith and Horace Greene. On January 30, 1985, on the grounds of a New Brunswick housing project, Greene taunted Smith and chased him with a knife. According to the State, Smith then obtained a rifle, returned to the grounds, and, with Anderson by his side, fired a shot at Greene. The bullet missed Greene but struck and killed Mosley.

Based on information received at the crime scene that evening, the New Brunswick Police suspected Anderson of having committed the shooting. At police headquarters, where he had been taken for questioning, Anderson told the interrogating detective not only that he had not committed the shooting but that he did not know who had. Subsequently Smith confessed to the shooting. After that confession, Anderson gave to the authorities a sworn nine-minute statement indicating that Smith had indeed fired the fatal shot.

Smith was charged with capital murder and related weapons offenses. His trial in January 1986, during which Anderson testified as a prosecution witness, resulted in a hung jury. After that trial, Anderson's family members became alienated from him and criticized him for having testified against his cousin.

At Smith's second trial in November 1986 the prosecution again produced Anderson as a State's witness. Anderson's testimony, however, diverged from his previous statements.

Contrary to his earlier version, Anderson testified that he, and not Smith, had fired the rifle but that he had not hit anyone. Confronted with that about-face, the prosecutor directed Anderson's attention to his sworn statement given shortly after the occurrence. Anderson denied having made that statement, maintaining instead that the police had fabricated it.

That evening at the correctional facility where Anderson was incarcerated for a parole violation, he had second thoughts about his testimony. He told a corrections officer that he had testified falsely at Smith's trial because of pressure exerted on him by his family, and said that he wanted to change his testimony. The next morning Anderson repeated to an investigator that he had lied in court because of family pressure and because he was angry at the prosecutor but now wanted to tell the truth, to wit, that his cousin had fired the rifle. That information was conveyed to the prosecutor by a note during closing arguments. Following the summations but before the jury charge, the prosecutor brought the note to the attention of the court but so far as the record discloses sought no remedial action. The jury, unaware of Anderson's desire to recant his testimony, returned a verdict of "not guilty" on the capital-murder indictment of Smith. The facts thus depict a truly material perjury: there is a strong possibility that the jury acquitted a capital-murder defendant because of Anderson's false testimony.

The State charged Anderson with two counts of perjury during the second Smith trial. Count One of the indictment was based on his testimony claiming that he had fired the rifle shot. Count Two referred to his testimony denying that he had made a statement to the police about the shooting. After pleading not guilty, Anderson went to trial before a judge and a jury.

At the conclusion of the State's case, the court ruled that both of the alleged falsifications had been material. Thereafter, prior to summations, it also ruled that defense counsel

would not be allowed to argue to the jury the issue of the materiality of the falsification alleged in Count Two of the indictment, defendant having conceded the materiality of the statement at issue in Count One. Defense counsel moved for a ruling that the perjury statute was unconstitutional because it violated defendant's right to have the jury decide all questions of fact. Guided by *Rule* 3:10–3, which addresses defenses and objections that can be raised only before or after trial, the court declined to rule on defendant's motion at that time.

In its instruction to the jury regarding the elements of perjury, the court made no mention of materiality, nor did it tell the jury that it had determined that the alleged falsifications were material as a matter of law. Rather, the court charged the jury, among other things, that the prosecution had to prove only three elements: first, that defendant had made the statement in an official proceeding; second, that the statement had been made under oath or affirmation; and third, that the statement was false and defendant knew it was false when made. The jury acquitted Anderson on Count One (I shot the rifle) and convicted him on Count Two (I did not give a statement to the police).

Prior to sentencing, defendant moved for a new trial, reasserting his claim that the perjury statute is unconstitutional. In denying that motion the court reasoned that because the Legislature could constitutionally pass a statute that made perjury a crime without including materiality as an element of that crime, it certainly could make materiality a matter to be decided by the court if the Legislature did decide to define perjury to include a showing of materiality. Hence, the court concluded that the delegation of that factual determination to a judge rather than a jury did not make the statute unconstitutional. The court then sentenced defendant to imprisonment for five years with two and one-half years of parole ineligibility to run consecutively to the term he was already serving for a parole violation.

Defendant appealed, raising over a dozen claims for relief. The Appellate Division found that the only claim meriting consideration was defendant's argument that by deeming materiality a question of law and therefore a question to be decided by the court, the perjury statute violates an accused's right to trial by jury. In affirming defendant's conviction in an unreported opinion, the Appellate Division expressed the view that withholding the question of materiality from consideration by the jury is unconstitutional, and agreed with the misgivings set forth in Judge Baime's concurring opinion in *State v. Whalen,* 235 *N.J.Super.* 506, 514–17, 563 *A.*2d 457 (App.Div.1989). Nevertheless, it felt constrained to uphold the validity of the statute:

> [A]lthough we have serious doubts about the conclusions reached by the majority in [*Whalen*] and, in fact are entirely sympathetic with Judge Baime's concurring opinion that the perjury statute "is repugnant to the right to a jury trial," we share his view that we are "powerless to act upon that position in light of settled case law." [*Id.* at 517, 563 A.2d 457.]

We granted defendant's petition for certification, 122 *N.J.* 411, 585 *A.*2d 407 (1990), limited to the issue of the constitutionality of the perjury statute.

## II

The statute at issue here defines the offense of perjury as follows:

> A person is guilty of perjury, a crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true. [*N.J.S.A.* 2C:28–1a.]

Proof of perjury, then, requires four independent showings: (1) making a false statement (2) material to the proceeding (3) under oath in an official proceeding (4) knowing the statement to be untrue. *See* II *Final Report of the N.J. Criminal Law Revision Comm'n* 272 (1971) (reprinted in J. Cannel, *N.J. Criminal Code Annotated* 2C:28–1 comment 2 (1991)). At oral argument the *amicus,* Attorney General, acknowledged that materiality is an essential element of the crime of perjury,

despite his earlier contrary position. *See ibid.* ("A required element of perjury under existing law is that of 'materiality.'"); *accord State v. Ellenstein,* 121 *N.J.L.* 304, 324, 2 *A.*2d 454 (E. & A.1938); *State v. Scott,* 12 *N.J.Misc.* 278, 171 *A.* 311 (Sup.Ct. 1934) (addressing materiality as an element of subornation of perjury). The statute addresses several aspects of materiality specifically:

> Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding or the disposition of the matter. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material is a question of law. [*N.J.S.A.* 2C:28–1b.]

This appeal focuses on that last sentence and its necessary implication that materiality is to be determined by the court and not the jury.

Defendant bases his challenge on the New Jersey Constitution, which states: "The right of trial by jury shall remain inviolate," *N.J. Const.* art. I, ¶ 9, and "[i]n all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury." *Id.* ¶ 10. In *State v. Ingenito, supra,* 87 *N.J.* 204, 432 *A.*2d 912, we explained the scope and recited the history of the right to trial by jury, tracing its underpinnings back to the Magna Carta and beyond. *Id.* at 210, 432 *A.*2d 912. We stated that "the right to a jury in a criminal trial ordinarily includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense." *Id.* at 217, 432 *A.*2d 912. In *Ingenito* we held that the application of collateral estoppel to a defendant in a criminal case constituted an invasion of the factfinding function of the jury.

> If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged. [*Id.* at 213, 432 *A.*2d 912.]

We have characterized the jury's responsibility to decide the facts as "nondelegable and nonremovable." *Id.* at 211,

432 *A*.2d 912. Hence, an accused is constitutionally entitled to have a jury find each factual element beyond a reasonable doubt before he or she is convicted. *See State v. Ragland,* 105 *N.J.* 189, 194, 519 *A*.2d 1361 (1986); *Ingenito, supra,* 87 *N.J.* at 217, 432 *A*.2d 912; *State v. Sinclair,* 49 *N.J.* 525, 542–43, 231 *A*.2d 565 (1967); *State v. Rudd,* 49 *N.J.* 310, 314, 230 *A*.2d 129 (1967); *State v. Schneiderman,* 20 *N.J.* 422, 426, 120 *A*.2d 89 (1956). Furthermore, a court may never instruct a jury to find against a criminal defendant on any factual issue that is an element of the crime charged. *See Bollenbach v. United States,* 326 *U.S.* 607, 66 *S.Ct.* 402, 90 *L.Ed.* 350 (1946); *State v. Humphreys,* 54 *N.J.* 406, 414–16, 255 *A*.2d 273 (1969); *State v. Corby,* 28 *N.J.* 106, 115, 145 *A*.2d 289 (1958). Thus, in *Humphreys* this Court invalidated a statutory provision creating a presumption of possession of a firearm by all persons occupying a vehicle in which the weapon is present. The Court noted that the provision could be attacked as "an unfair limitation on the defendant's right to a jury trial. The 'deliberative function of the jury is improperly circumscribed * * * by [its] being told that the presumption springs into existence as a matter of law * * *.' " 54 *N.J.* at 416, 255 *A*.2d 273 (quoting *Corby, supra,* 28 *N.J.* at 115, 145 *A*.2d 289).

■ Intertwined with the right to a jury trial is the federal constitutional right to due process of law. *See Ingenito, supra,* 87 *N.J.* at 214–15 & n. 3, 432 *A*.2d 912. See *United States Constitution* amendment XIV, section 1; *New Jersey Constitution* article I, paragraph 1. The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970); *accord Cage v. Louisiana,* 498 *U.S.* ——, ——, 111 *S.Ct.* 328, 329, 112 *L.Ed.*2d 339, 341 (1990) (quoting *Winship* ); *Carella v. California,* 491 *U.S.* 263, 265, 109 *S.Ct.* 2419, 2420, 105 *L.Ed.*2d 218, 221 (1989) ("The Due Process Clause of the Fourteenth Amendment denies

States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense."). Similarly, this Court has held that due process requires that an accused receive a trial "in which the jury must find that the State has proved each and every material element of the crime beyond a reasonable doubt." *State v. Ragland, supra,* 105 *N.J.* at 193–94, 519 *A.*2d 1361 (citing *State v. Grunow,* 102 *N.J.* 133, 145 n. 5, 506 *A.*2d 708 (1986); *State v. Toscano,* 74 *N.J.* 421, 442–43, 378 *A.*2d 755 (1977)). Both the tenets of due process and the right to a jury trial mandate that here materiality, as an element of the offense of perjury, must be found beyond a reasonable doubt by the jury.

The State points out that the right to a jury under our constitution has been interpreted as no more than co-extensive with the scope of that right under the Sixth Amendment of the United States Constitution. See *State v. Whalen, supra,* 235 *N.J.Super.* at 517, 563 *A.*2d 457 (Baime, J.A.D., concurring) (finding nothing in New Jersey law to justify more expansive rights to a trial by jury under state law). It then argues that because the Supreme Court has recently reiterated that the " 'materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court,' " *Kungys v. United States,* 485 *U.S.* 759, 772, 108 *S.Ct.* 1537, 1547, 99 *L.Ed.*2d 839, 854 (1988) (quoting *Sinclair v. United States,* 279 *U.S.* 263, 298, 49 *S.Ct.* 268, 273, 73 *L.Ed.* 692, 700 (1929)), there is no basis for us to hold otherwise.

Although we are well aware of the precedential effect of Supreme Court pronouncements on issues of federal law, see *Battaglia v. Union County Welfare Board,* 88 *N.J.* 48, 60, 438 *A.*2d 530 (1981), *cert. denied,* 456 *U.S.* 965, 102 *S.Ct.* 2045, 72 *L.Ed.*2d 490 (1982); *State v. Coleman,* 46 *N.J.* 16, 34, 214 *A.*2d 393 (1965), *cert. denied,* 383 *U.S.* 950, 86 *S.Ct.* 1210, 16 *L.Ed.*2d 212 (1966), we hesitate to place conclusive weight behind the Court's statement in *Kungys.* We note that the statute at issue there does not provide for a trial by jury, *see Luria v.*

*United States*, 231 *U.S.* 9, 27–28, 34 *S.Ct.* 10, 15, 58 *L.Ed.* 101, 107 (1913); consequently, the issue would be resolved by the court no matter how characterized. Although the Court in *Kungys* requested additional briefs on whether materiality is a question of law or fact, its focus was on the proper scope of review. 485 *U.S.* at 772, 108 *S.Ct.* at 1547, 99 *L.Ed.*2d at 854. The Court saw "no reason not to follow what has been done with the materiality requirement under other statutes," *ibid.*, primarily because there was no occasion to address either the constitutional jury-right issue or the related due-process issue.

We are not convinced that should the Supreme Court squarely address the issue, it would find the rule of *Sinclair* reconcilable with its construction of the fundamental right to a trial by jury. Hence, we need not explicate a rationale for "expanding" the right to a jury under state law, because the court in *Kungys* did not address the issue before us today.

### III

We recognize that the vast majority of courts, including our own, considering the issue have found that the determination of materiality in perjury cases is a question of law to be resolved by the court. See Annotation, *supra*, 37 *A.L.R.*4th at 951. Our contrary conclusion invites the question: how could so many have been so wrong for so long? The answer, we believe, comes in three parts. First, the early cases erroneously equated materiality for purposes of the perjury statute with materiality as a preliminary determination on the admissibility of evidence. Because evidentiary questions of materiality had always been decided by the court, those courts that addressed the issue made the improvident analytical assumption that materiality as an element of perjury must likewise be decided as a matter of law. For example, in *People v. Lem You*, 97 *Cal.* 224, 32 *P.* 11 (1893), the California Supreme Court noted that when a party offers evidence and its adversary objects on the basis of materiality, the question is clearly for the court.

Without further analysis, it then stated that the procedure is exactly the same when the issue is the materiality of allegedly false testimony in a perjury trial. *Ibid.* 32 *P.* at 12 ("question of the materiality of evidence, no matter when or how it may arise, is always one of law for the court, and not of fact for the jury").

The reason for treating materiality as an element of perjury differently from materiality as an initial evidentiary determination is well set forth in *People v. Clemente, supra,* 136 *N.Y.S.*2d 202, 206 (1954):

> What the law really does, in the interest of a fair trial and reasonably controlled trial, is to vest in the court a preliminary power of ruling on the materiality of evidence to the end that evidence which a jury should not consider at all may be excluded from their consideration altogether. A ruling in favor of materiality means no more than that the jury may consider the evidence. Its materiality then becomes a question of fact for the jury. And certainly materiality as a substantive element of the crime of perjury is something more than materiality considered in an evidentiary ruling by the court. Materiality in such a case becomes a matter for ultimate determination by the [jury].
>
> We are not persuaded to the view, therefore, that the nature of the subject requires the removal of the question of materiality from the jury's consideration or reserving it to the court.

*See State v. Winters,* 140 *N.J.Super.* 110, 116, 355 *A.*2d 221 (Law Div.1975) (materiality as an element of perjury certainly "is something other than materiality in the evidentiary sense").

■ The issue that a court decides in determining the materiality of an allegedly false statement is whether the statement "could have affected the course or outcome of the proceeding or the disposition of the matter." *N.J.S.A.* 2C:28–1b. Restated, the question is whether that statement could have affected the prior jury's verdict. That determination is clearly within the province and capabilities of the members of a jury. *See State v. Whalen, supra,* 235 *N.J.Super.* at 512 n. 3, 563 *A.*2d 457 ("we have no doubt that jurors are capable of deciding the issue [of materiality] if it is presented properly"). As stated in *Clemente,*

> [w]hile as lawyers we are accustomed to thinking of materiality as a matter for judicial ruling, there is nothing in the nature or quality of materiality which

makes it essentially a legal concept or removes it from the ken of a layman's discernment and determination. The word "material" and the idea of materiality are commonly understood, and every day judgments on a variety of subjects are made upon the basis of a layman's sense of materiality. [136 *N.Y.S.*2d at 205.]

Second, the rule that characterized materiality in perjury cases as a question of law became well established as later opinions cited the early cases, apparently with little or no independent analysis. See *State v. Lupton,* 102 *N.J.L.* 530, 534, 133 *A.* 861 (*Sup.Ct.* 1926) ("It is settled law that on a trial for perjury, the question whether evidence is material to the issue is solely for the court to determine and not for the jury."); *Carroll v. United States,* 16 *F.*2d 951, 954 (2d Cir.1927) (cited approvingly in *Sinclair*); *Sinclair v. United States, supra,* 279 *U.S.* at 298, 49 *S.Ct.* at 273–74, 73 *L.Ed.* at 700 ("Upon reasons so well known that their repetition is unnecessary it is uniformly held that relevancy is a question of law. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court." (citations omitted)); *United States v. Siegel,* 263 *F.*2d 530, 532–33 (2d Cir.) ("It is scarcely necessary to add that 'materiality' is always a question for the court."), *cert. denied,* 359 *U.S.* 1012, 79 *S.Ct.* 1147, 3 *L.Ed.*2d 1035 (1959). Thus, the allocation to the court of the determination of materiality became firmly entrenched in the law without having been subjected to detailed scrutiny or having been harmonized with the requirements of due process and the right to a jury trial.

Finally, faced with the seemingly overwhelming precedent, most courts have declined to reexamine the validity and soundness of the rule in light of more recent cases emphasizing the right of an accused to have the jury find all elements of a crime beyond a reasonable doubt. See, *e.g., State v. Whalen, supra,* 235 *N.J.Super.* at 512–13, 563 *A.*2d 457. In *United States v. Nazzaro,* 889 *F.*2d 1158 (1st Cir.1989), the defendant challenged his conviction on two counts of perjury, claiming that the district court had erred in neglecting to submit the question of

materiality to the jury. The court of appeals rejected that claim as "shopworn," explaining that

[i]t is well settled, on the highest and best authority, that the materiality of perjurious testimony is within the exclusive domain of the court, not the jury. We have consistently followed this directive and deem ourselves firmly bound by the precedent. In any event, appellant has offered us no persuasive reason to depart from so established a principle. [*Id.* at 1166 (citations and footnote omitted).]

In fact, the defendant had relied on *Taylor, supra,* 693 *F.Supp.* 828; however, the court found that *Taylor,* "suggesting that *Sinclair* has been implicitly overruled, is thoroughly unconvincing. We decline to follow it." 889 *F.*2d at 1166 n. 4.

Although we rest our holding that the question of materiality in perjury cases must be decided by the jury on state constitutional law, because the parties here have presented the issue solely as one of state law, we concur with Judge Lynch's federal-law analysis of the issue in *Taylor, supra,* finding his treatment both thorough and persuasive: " 'We remain convinced that materiality is a factual question to be submitted to the jury with proper instructions like other essential elements of the offense, unless the court rules, as a matter of law, that no submissible case is made out by the Government on the issue of materiality.' " 693 *F.Supp.* at 844 (quoting *United States v. Irwin,* 654 *F.*2d 671, 677 n. 8 (10th Cir.1981), *cert. denied,* 455 *U.S.* 1016, 102 *S.Ct.* 1709, 72 *L.Ed.*2d 133 (1982)).

This Court has recognized that "the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole." *Ingenito, supra,* 87 *N.J.* at 212, 432 *A.*2d 912; *accord Ragland, supra,* 105 *N.J.* at 217–18, 519 *A.*2d 1361 (Handler, J., concurring in part and dissenting in part). "Society as a whole" has decided that the jury system is the way we as a civilized state go about choosing whether to punish someone. That proposition is taken so seriously that a judge may never direct a verdict of guilty, not on a single element nor in the face of overwhelming evidence of guilt. *Ingenito, supra,* 87 *N.J.* at 213, 432 *A.*2d 912; *State v. Simon,* 79 *N.J.* 191, 199,

398 *A.*2d 861 (1979). "The 'question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury * * *.' " *Ingenito, supra,* 87 *N.J.* at 211, 432 *A.*2d 912 (quoting *Bollenbach, supra,* 326 *U.S.* at 614, 66 *S.Ct.* at 406, 90 *L.Ed.* at 355). There is a sound basis for the colorful expression that "our citizens generally prefer to have their fates determined by twelve fools rather than one." *State v. Break-iron,* 210 *N.J.Super.* 442, 468–69, 510 *A.*2d 80 (App.Div.1986) (Baime, J.A.D., dissenting), *aff'd in part and rev'd in part,* 108 *N.J.* 591, 532 *A.*2d 199 (1987).

■ Because a jury is unquestionably qualified to decide what could influence a jury's decision, and because the "right to a jury in a criminal trial ordinarily includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense," *Ingenito, supra,* 87 *N.J.* at 217, 432 *A.*2d 912, our constitution requires that the question of materiality in a prosecution for perjury be submitted to the jury. The provision in the perjury statute declaring that "[w]hether a falsification is material is a question of law" must therefore be severed and stricken as in violation of article one, paragraphs nine and ten of the New Jersey Constitution. See *Chamber of Commerce of the United States v. State,* 89 *N.J.* 131, 162, 445 *A.*2d 353 (1982); *N.J.S.A.* 1:1–10.

### IV

As we have endeavored to make clear, our holding rests on the syllogism that (a) the constitution requires that the jury decide each element of a crime beyond a reasonable doubt; (b) materiality is an element of the crime of perjury; therefore, (c) the constitution requires that the jury decide the element of materiality in perjury trials. Our dissenting colleague's rejection of that simple, basic proposition seems to stem from an unfortunate confusing of the right to a jury trial in civil cases with the corresponding right in criminal cases, as well as from a misperception of precisely what issue this appeal presents.

Unlike the criminal jury right, the civil jury right is limited to its historical bounds. It depends in large measure on the traditional difference between law and equity. *See Weinisch v. Sawyer,* 123 *N.J.* 333, 342–43, 587 *A.*2d 615 (1991); *Shaner v. Horizon Bancorp,* 116 *N.J.* 433, 445–46, 561 *A.*2d 1130 (1989). In the civil context the right to a jury trial turns on whether that right existed at common law when the New Jersey Constitution was adopted. *Weinisch, supra,* 123 *N.J.* at 343, 587 *A.*2d 615. The provision of Article I, paragraph 9 of the 1947 Constitution that "[t]he right of trial by jury shall remain inviolate" means that a civil litigant may demand a jury trial if the same (or most highly analogous) action entitled one to a jury trial when the people adopted their constitution (probably the 1776 Constitution, maybe the 1947 document, possibly the 1844 version. *See ibid.*). It is no accident, then, that the cases cited in the dissent, *post* at 210–11, 603 *A.*2d at 937–38, for the proposition that the right to a jury trial must have pre-constitutional origins are primarily civil, *i.e., Shaner, supra,* 116 *N.J.* 433, 561 A.2d 1130 (no right to jury trial on claim under Law Against Discrimination); *Chiacchio v. Chiacchio,* 198 *N.J.Super.* 1, 486 *A.*2d 335 (App.Div.1984) (right to jury trial of contract claim); *Quinchia v. Waddington,* 166 *N.J.Super.* 247, 399 *A.*2d 679 (Law Div.1979) (no right to jury trial on issue of compliance with statutory notice provisions for parties seeking damages from Unsatisfied Claim and Judgment Fund); or involve minor or quasi-criminal offenses rather than serious crimes, *i.e., Board of Health v. New York Cent. R.R. Co.,* 10 *N.J.* 294, 90 *A.*2d 729 (1952) (violation of municipal ordinance regulating air pollution); *Town of Montclair v. Stanoyevich,* 6 *N.J.* 479, 79 *A.*2d 288 (1951) (violation of zoning ordinance); *Vega v. Sullivan,* 2 *N.J.Misc.* 385 (Sup.Ct.1924) (involving legislatively-created offense of permitting children to be employed in factories).

The right to a jury trial in a prosecution for a serious crime, on the other hand, surely does not require any examination of history for its justification, nor does the dissent cite a single

authority requiring that courts are bound by a historical approach. Significantly, although the constitutional basis for the civil jury right is found only in Article I, paragraph 9 of the 1947 Constitution, the criminal jury right is protected by paragraph 10 as well. The difference between the two provisions is this: paragraph 9 purports to preserve the jury right, whereas paragraph 10, containing no language pointing to history, declares that all criminal defendants "shall have the right to a speedy and public trial by an impartial jury." The criminal jury right, with more than one constitutional basis, simply does not labor under the same historical restrictions as the civil jury right. And even were we to consider an argument based on history, we would take account of the overwhelming sentiment of those who formed our institutions to be free of the oppressive practices of Crown Courts. *See Green v. United States*, 356 *U.S.* 165, 214, 78 *S.Ct.* 632, 659, 2 *L.Ed.*2d 672, 705 (1958) (Black, J., dissenting). For example, despite pre-constitutional powers of courts to imprison and punish for contempt, "the traditional rule is constitutionally infirm insofar as it permits other than petty contempts to be tried without honoring a demand for a jury trial jury." *Bloom v. Illinois*, 391 *U.S.* 194, 198, 88 *S.Ct.* 1477, 1480, 20 *L.Ed.*2d 522, 526 (1968).

But beyond that, the cases on which the dissent relies all go to an issue that is not in dispute on this appeal—that is, they focus on whether a jury trial is available, not on what the jury decides. The cases to which we should look for guidance, therefore, are not those that answer what causes of action trigger the right to a jury trial but rather those that deal with the respective functions of judge and jury in a criminal trial—cases such as *Ragland, supra*, 105 *N.J.* 189, 519 *A.*2d 1361; *Ingenito, supra*, 87 *N.J.* 204, 432 *A.*2d 912; *Humphreys, supra*, 54 *N.J.* 406, 255 *A.*2d 273, and authorities cited in those decisions. And those authorities give to the question posed here an unmistakably clear answer, namely, that in a criminal prosecution in which the accused has a constitutional right to a trial by jury, each element of the crime must be decided by the

jury and none of those elements may be withheld from the jury and decided by the judge as a matter of law. As *Ingenito* instructs us, the criminal jury right, unlike the civil jury right, is intertwined with the due-process requirement that the State prove every element of the crime beyond a reasonable doubt. 87 *N.J.* at 214–15 & n. 3, 432 *A.*2d 912. On that proposition we fail to see how there can be any dispute.

## V

Returning to the circumstances before us, we conclude that Anderson's conviction cannot stand. The jury acquitted defendant on Count One (I shot the rifle); it convicted him only on Count Two (I did not give a statement to the police). The evidence was not so compelling that the failure to submit to the jury the issue of materiality of the latter statement can be considered harmless. The failure to send an element of a crime to the jury generally should not be considered harmless error. *State v. Harmon,* 104 *N.J.* 189, 213, 516 *A.*2d 1047 (1986) ("errors on matters material to the jury's factfinding function are ordinarily considered 'poor candidates for rehabilitation under the harmless error philosophy' " (quoting *Simon, supra,* 79 *N.J.* at 206, 398 *A.*2d 861)); *see also Clemente, supra,* 136 *N.Y.S.*2d at 208 ("no essential element of a crime, however clear the facts may be in the evidence, may be taken away from the jury").

The judgment of the Appellate Division is reversed. The conviction for perjury is vacated, and the cause is remanded to the Law Division for proceedings consistent with this opinion.

WILENTZ, Chief Justice, dissenting.

I respectfully dissent. The Court, I believe without justification, has declared an act of the Legislature to be unconstitutional.

The Legislature has said that in a trial for perjury, the judge shall decide whether the perjurious statement is "material,"

that is to say, the judge shall decide whether it "could have affected the course or outcome of the proceeding." *N.J.S.A.* 2C:28–1b. The majority rules that New Jersey's constitutional right to trial by jury requires a different result. It rules that the State's constitutional provision guaranteeing a jury trial requires that the *jury* decide "materiality." It is a ruling unsupported by the generally accepted construction of that State constitutional provision.

## I

It has been held without controversy, dissent, or even question that the right of a defendant in a criminal matter to trial by jury guaranteed by our State Constitution is defined and limited by that right as it existed at the time of the adoption of our original Constitution. In other words, one claiming a right to trial by jury under the New Jersey Constitution must point to that right as it existed prior to 1776 when our first Constitution was adopted. That issue was settled by this Court in *Montclair v. Stanoyevich*, 6 *N.J.* 479, 484, 79 *A.*2d 288 (1951). We held there that minor offenses not tried by jury at common law were triable without jury before a magistrate in a summary manner. We held that the critical issue when a defendant claimed a right to trial by jury is whether that right existed prior to 1776. We held further that every succeeding Constitution, in 1844 and in 1947, simply maintained that right but only as it existed prior to our original Constitution.

> The thread of appellant's argument is that each constitutional provision speaks anew as of the time of the adoption of the instrument of which it is part and includes such legislative provisions as are on the statute books at the time of the adoption, however recently theretofore the statutory provision had been passed. We find otherwise. The right of trial by jury protected in each of our Constitutions is the right as it existed at common law *and* remained on July 2, 1776 * * *. Each succeeding Constitution undertook to preserve, inviolate, the right as it had originally existed and which the 1776 instrument ordained was to be "without repeal, forever." [*Id.* at 485, 79 *A.*2d 288.]

*Accord Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 447–48, 561 *A.*2d 1130 (1989); *Chiacchio v. Chiacchio*, 198 *N.J.Super.* 1, 6,

486 *A.*2d 335 (App.Div.1984); *Quinchia v. Waddington,* 166 *N.J.Super.* 247, 249, 399 *A.*2d 679 (Law Div.1979); *Vega v. Sullivan,* 2 *N.J.Misc.* 385 (Sup.Ct.1924).

There are many variations on this theme, including the proposition that a new offense created by statute entitles the defendant to a constitutional right of trial by jury only "if it belongs to a class of cases triable by jury at common law * * *. Our constitutions have merely preserved the right of trial by jury; they have not extended it." *Board of Health v. New York Cent. R.R. Co.,* 10 *N.J.* 294, 303, 90 *A.*2d 729 (1952) (citation omitted). I know of no case suggesting anything different about the scope of the right to trial by jury under the New Jersey Constitutions.

The constitutional provisions at issue, which govern criminal trials, are article I, paragraphs 9 and 10 of the New Jersey Constitution of 1947, identical in part to article I, paragraphs 7 and 8 of the New Jersey Constitution of 1844.[1] Both paragraphs were derived from paragraph XXII of the Constitution of 1776, which holds that "the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever." The relevant paragraphs of the Constitutions of 1947 and 1844 provide that "[t]he right of trial by jury shall remain inviolate" (*N.J. Const.* art. I, ¶ 9; *N.J. Const. of 1844* art. I, ¶ 7) and that "[i]n all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury" (*N.J. Const.* art. I, ¶ 10, *N.J. Const. of 1844* art. I, ¶ 8).

No doubt exists that both of these provisions define and protect the right to jury trials in *criminal* matters. *See State v. Ingenito,* 87 *N.J.* 204, 432 *A.*2d 912 (1981) (citing the article I, paragraph 9 "inviolate" provision throughout as applicable to criminal matters); *State v. Maier,* 13 *N.J.* 235, 276–77, 99 *A.*2d

---

[1] Paragraph 9 of the 1947 Constitution (and its predecessor, paragraph 7 of the 1844 Constitution) also governs civil matters.

21 (1953) (applying article I, paragraphs 9 and 10 of the 1947 Constitution to criminal matters in rejecting the claim of right to trial by jury). See also *Stanoyevich, supra,* 6 *N.J.* at 485, 79 *A.*2d 288, which states that

> [t]he provisions under study, as well as the command that no person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury * * * alike have relations to the substance of the common law. Each succeeding Constitution undertook to preserve inviolate, the right as it had originally existed and which the 1776 instrument ordained was to be "without repeal, forever."

No doubt exists that *both* paragraphs (article I, paragraphs 9 and 10 of the 1947 Constitution and article I, paragraphs 7 and 8 of the 1844 Constitution) limit that right to what it was at common law prior to the adoption of the 1776 Constitution— despite the view of the majority that only the "inviolate" section (article I, paragraph 9 of 1947, article I, paragraph 7 of 1844) has such an historical limit. Presumably, the majority is of the view that article I, paragraph 10 of 1947 and article I, paragraph 8 of 1844 ("in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury") are free standing provisions unconnected with any historic roots, to be interpreted in accordance with their plain meaning. *Ante* at 207–08, 603 *A.*2d at 936.

The majority ignores our prior interpretations of these constitutional provisions. In *Maier,* for example, paragraphs 9 and 10 of article I of the current Constitution were interpreted throughout by reference to the common law and history prior to 1776. Chief Justice Vanderbilt, writing for the majority, stated simply that

> [t]he only question before us is whether or not [the criminal statute] contravenes paragraphs 8, 9, and 10 of Article I of our Constitution relating to indictment by a grand jury and trial by an impartial jury. To resolve this question requires * * * a study of the summary jurisdiction of the justice of the peace at common law * * *. [13 *N.J.* at 243–44, 99 *A.*2d 21.]

Later in the opinion he stated, "to recapitulate, justices of the peace had jurisdiction at common law before 1776 to punish simple assaults and simple assaults and batteries summarily without indictment and without trial by jury." *Id.* at 278, 99

*A.2d* 21. This critical conclusion supported the interpretation that paragraphs 9 *and* 10 of article I of the 1947 Constitution do not require a trial by jury of such offenses. *Ibid.; see Stanoyevich, supra,* 6 *N.J.* at 488, 79 *A.*2d 288 ("Art. I, ¶ 8 of the 1844 Constitution directing that in all criminal prosecutions the accused should have the right to a speedy trial by an impartial jury conferred no new right but only what was previously a common law right." (citing *State v. Fox,* 25 *N.J.L.* 566, 589 (Sup.Ct.1856))).[2]

The majority would challenge these rules of constitutional law because they appear in cases that do not involve "crimes."

---

[2]Indeed, the cases accepting this view of the law are legion. *See, e.g., Roesel v. State,* 62 *N.J.L.* 216, 247, 41 *A.* 408 (E. & A.1898) (The "concluding paragraph of [the right to trial by jury section of the 1776 Constitution] retains and confirms the institution of trial by jury in civil as well as in criminal cases. No implication arises from this language of a purpose to enlarge the powers of jurors, in either civil or criminal cases, beyond what they were at common law * * *."); *State v. Doty,* 32 *N.J.L.* 403, 405 (E. & A.1868) (in affirming criminal conviction for contempt, stated that the effect of the constitutional right to jury trial provision "is to establish the privilege by the highest of sanctions, but not to enlarge it. The provision operates as a restraint upon the legislative power; the right is not to be impaired or diminished, but is to remain as it existed at common law * * *."); *Peck v. Police Court,* 137 *N.J.L.* 19, 20, 57 *A.*2d 488 (Sup.Ct.1948) (in prosecution for criminal conviction for forcibly interfering with member of police department in performance of his duties, explained that

the constitutional right of trial by jury in article I, paragraph 7, of the New Jersey Constitution of 1844 preserves the right in cases where it existed at the time of the adoption of the constitution and was not intended to introduce the right in cases where by law and long precedent it did not previously exist.) (citations omitted);

*Vega v. Sullivan, supra,* 2 *N.J.Misc.* at 385 (stating, in criminal conviction for endangering the welfare of a child, that "[t]rial by jury under our constitution is not an absolute right of the defendant in all cases. The rule is settled beyond cavil that it is guaranteed only in those cases where it exists at common law." (citations omitted)); *Katz v. Eldredge,* 96 *N.J.L.* 382, 118 *A.* 242 (Sup.Ct.1921), *rev'd on other grounds,* 97 *N.J.L.* 123, 117 *A.* 841 (E. & A.1922) (in criminal conviction for selling liquor in violation of Prohibition laws, stating "[t]he constitutional right of trial by jury applies only to cases in which the prerogative existed at common law or was secured by statute at the time the constitution was adopted, and not in those cases where the right

It seems true that there are probably *no* cases where the defendant was *indicted* that propound these constitutional rules. Once the offense is concededly indictable, it is axiomatic that the constitutional right to jury trial attaches, for beyond debate such offenses called for a jury in 1776. No analysis is needed, no question arises on how to interpret the constitutional provisions in indictable matters. The cases that test the meaning of these constitutional provisions are those in which the defendant claims trial of the offense requires a jury and the State claims it does not—all of the cases cited above falling in that category. It is not always an easy question (*Maier* took fifty pages, the decision was 4–3), but the constitutional rule governing its answer is not in dispute: the constitutional right to trial by jury in criminal matters exists only if the offense was triable by jury at common law at the time of the adoption of our first Constitution.

The Federal Constitution has been similarly interpreted—as has probably every state constitution with similar language. See Harry Kalven, Jr., & Hans Zeisel *The American Jury* 15 n. 5 (1966). In *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968), the Supreme Court held that the federal right to trial by jury in criminal matters was applicable to the states by virtue of the Fourteenth Amendment. Having so held, at issue was the meaning of the Sixth Amendment to the United States Constitution, which guarantees a right to trial by jury in all criminal prosecutions in words identical to article I, paragraph 10 of the 1947 Constitution.[3] That is the provision that the majority says has no historic definition. The Supreme Court, however, determined the scope and meaning of that provision by reference to the right to trial by jury as it existed

---

and the remedy with it are thereafter created by statute." (citations omitted)); *Johnson v. Barclay,* 16 *N.J.L.* 1, 6 (Sup.Ct.1837) (same).

[3]Both Constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10.

prior to the adoption of the Federal Constitution. *Id.* at 160, 88 *S.Ct.* at 1453, 20 *L.Ed.*2d at 502 ("So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions.").

Only one arguably debatable point is involved in this case. It is whether the Constitution limits not only which offenses are triable by jury by reference to the right prior to 1776, but which *issues* are to be so tried where the offense admittedly calls for a jury. It is clear that, *generally,* every material element of a crime must be tried by the jury, for essentially that is what is meant when it is said that there is a right to trial by jury. But what about an offense where one of the issues—arguably material—was *not* tried by the jury at common law even though the crime itself was, but rather such issue, part of the crime, was decided by the judge? I believe that since the function of the constitutional provision is to preserve what existed before, it necessarily follows that there is no constitutional right to try such an issue before a jury, an issue that never had been so tried before. *Maier, supra,* 13 *N.J.* at 264–65, 99 *A.*2d 21. The right that is preserved is what existed at the time of the Constitution, what existed then in fact, in practice, not some construct of the right's content that may be generally accurate but that overlooks its historical essence. The question is rarely touched, but this view is supported by *Roesel v. State,* 62 *N.J.L.* 216 (E. & A.1898), where the Court, in *dictum,* dealt with the extent of the then right to trial by jury in criminal libel matters. The Court discussed the question of whether the legal *issue* of libel, as distinguished from the factual *issue,* was for the court or the jury prior to 1776. There was no doubt that the case itself called for trial by jury. The question was analyzed by reference to the practice at common law prior to the Constitution. *Id.* at 248–54.

Similarly, *Steiner v. Stein,* 2 *N.J.* 367, 66 *A.*2d 719 (1949), a civil case, analyzed the right to trial by jury in terms of which

*issues* were so triable by the jury. *Steiner* involved article I, paragraph 9, of the 1947 Constitution, ("inviolate"), applicable, as noted above, to the right to trial by jury in both civil and criminal cases. The Court held that an *issue* not triable by jury under the prior Constitution did not become one for the jury by virtue of paragraph 9 ("the right of a trial by jury shall remain inviolate"):

> Wherever an *issue of fact* was triable without a jury under the Constitution of 1844, it is triable without a jury under the Constitution of 1947. The constitutional provision preserving trial by jury inviolate does not enlarge the scope of the right to trial by jury; it merely precludes its attrition by either the Legislature or the courts. [*Id.* at 379, 66 *A*.2d 719 (emphasis supplied).]

While the case was civil, there is no reason to distinguish it from a criminal case, for it is the same constitutional provision that was involved, preserving the right to trial by jury inviolate in both civil and criminal cases, applicable to issues as well as to the case itself, and in both instances limited by historic practice.

The same result obtains here. The case before us was triable by jury at common law, but within that case the issue of materiality was determined not by the jury but by the court. *Gordon v. State*, 48 *N.J.L.* 611, 7 *A.* 476 (E. & A.1886). The Constitution today preserves inviolate only that right to trial by jury that it took from the common law, the right to try the perjury case but not the issue of materiality.

There is nothing in *State v. Ragland*, 105 *N.J.* 189, 519 *A*.2d 1361 (1986), *Ingenito*, or *State v. Humphreys*, 54 *N.J.* 406, 255 *A*.2d 273 (1969), to the contrary. *Ante* at 208–09, 603 *A*.2d at 936–37. They all involved cases and issues concededly triable by jury; none of them involved the contention that either a case or an issue within that case was not triable by jury. Those cases simply have nothing to do with the question at issue before us today. Given that a particular issue in a criminal case is concededly triable by jury, what those cases dealt with is whether the trial practice involved had the effect of unconstitutionally diminishing that right. No one contended that the practice involved was permitted at common law.

In *Humphreys* the issue was possession, the unconstitutional practice being a charge of "presumed possession" which substantially diminished jury fact finding, 54 *N.J.* at 416, 255 *A.*2d 273; in *Ingenito*, again the question was possession, the unconstitutional practice being the introduction of evidence with the effect of substantially precluding jury fact-finding, similar to collateral estoppel, 87 *N.J.* at 209–10, 432 *A.*2d 912; in *Ragland* the issue was possession once more, the unconstitutional practice being a charge greatly diluting the jury's fact-finding role. 105 *N.J.* at 193–94, 519 *A.*2d 1361. *Ragland* also dealt with the question whether the constitutional right to trial by jury was infringed when the jury was instructed that it "must" convict if it found the elements of the crime beyond a reasonable doubt. *Id.* at 196–204, 519 *A.*2d 1361. Having determined that the United States Constitution did not invalidate such a charge, we declined to pass on the state constitutional issue. Noting that "no constitutional argument has been asserted," and that the constitutional history had been "neither briefed nor argued," we declined "to search New Jersey's judicial history to determine whether the 'must convict' charge was either so clearly established or so clearly rejected as to warrant a conclusion that the reception of common law determines the issue, or that the history post-reception somehow determines the issue." *Id.* at 199 n. 3, 519 *A.*2d 1361.

The only question before us, therefore, is whether the materiality issue in a perjury case was triable by the jury at common law prior to the adoption of the Constitution of 1776.

The earliest New Jersey case that conventional research can find dealing with the disposition of the materiality issue in perjury prosecutions is *Gordon v. State, supra,* 48 *N.J.L.* at 611, 7 *A.* 476. In *Gordon,* the Court held that materiality is to be determined by the judge and not by the jury. No constitutional question was raised. Neither that case nor any of those that follow in this State suggests that there has ever been a case, either before or after *Gordon,* ruling to the contrary. Instead, the cases that follow uniformly relegate the issue of

materiality to the court, and not to the jury. *See State v. Whalen*, 235 *N.J.Super.* 506, 509–10, 563 *A.*2d 457 (App.Div. 1989); *State v. Molnar*, 161 *N.J.Super.* 424, 451, 391 *A.*2d 1225 (App.Div.1978), *rev'd on other grounds*, 81 *N.J.* 475, 410 *A.*2d 37 (1980); *State v. Lupton*, 102 *N.J.L.* 530, 534, 133 *A.* 861 (Sup.Ct.1926); *State v. Winters*, 140 *N.J.Super.* 110, 113, 355 *A.*2d 221 (Cty.Ct.1976). While more painstaking research might uncover perjury prosecutions conclusively demonstrating what the practice had been prior to *Gordon*, there is no reason to believe that the materiality issue was handled differently, no reason to believe that in New Jersey at any time prior to 1776, or thereafter, materiality had been disposed of by anyone other than the judge. Given that evidence, there would seem to be no need for additional authority proving that the practice within this State prior to 1776 was to commit that issue to the court. The available evidence is such that the burden is clearly on those asserting the contrary. I know of no such contrary evidence.

The conclusion reached in this dissent is not a matter of logic but of history and precedent. The precedents are our own cases that say what the constitutional provision means—that the right to trial by jury in criminal matters is only that right that existed prior to 1776. The history is that prior to 1776—as far as we can tell—the right to trial by jury of this issue did not exist. As a matter of fact, the issue was to be tried by the judge. The logic behind that determination—certainly debatable—is irrelevant. It is just as irrelevant as the logic behind committing trials of minor criminal offenses to the judge but other criminal offenses to the jury. Centuries of history explain the practice that led, prior to 1776, to some criminal cases being tried by a jury and some not, and logic was probably the smallest portion of a multitude of considerations, relationships, and accidents that went into the mix. *See generally* Felix Frankfurter & Thomas G. Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury*, 39 *Harv. L.Rev.* 917 (1926) (discussing historical evolution of summary

procedures for criminal prosecutions). What our constitutional right to trial by jury preserved, however, was the result of that history, not to be reversed because we would have preferred it to be different, nor to be reversed because it is either illogical or nonlogical.

While the foregoing historical analysis does not purport to be complete, no more is needed for this case.

There are some constitutional provisions that grow as society grows and as its values change. And I assume that even the right to trial by jury under our New Jersey Constitution may in some circumstance be modified from what has been described above. I do not know what that circumstance might be, but it certainly has not been suggested here.[4] These are constitutional provisions that this Court has stated unequivocally are fixed in their meaning; the right to trial by jury in criminal matters is not a constitutional right defined either by reference to societal values or to the generalized intent of the founding fathers. It is a definite delimited right. We have no warrant to expand it, and especially so when the effect is to invalidate an act of the Legislature.

---

4It is possible that the statutory definition of materiality has so transformed the understanding of materiality at common law as to have converted what was a question of law into one of fact. As noted below, that depends on how the statute is interpreted. Assuming such change in meaning, it is also possible that since it is the Legislature that defines the "elements" of a crime, that which formerly was *not* an element, given its nature as a question of law, and its constitutional submission to the judge for determination, did not become one by virtue of the added protection given to defendants in the form of the more substantial showing required by the State in order to submit the case to the jury. Even when intent to deceive may have been the essence of materiality, the question at common law prior to 1776 was decided by the court. Furthermore, assuming a statutory interpretation that would lead to a declaration of unconstitutionality, it is also possible that this Court would conclude that, given the choice, the Legislature would prefer to sustain the provision requiring submission to the judge rather than such an interpretation of the definition of materiality, leading the Court to construe the definition in accord with that preference.

If it is unseemly to decide a case in 1992 concerning the right to trial by jury on the basis of what happened before 1776, we should overrule those cases of this Court that define what the constitutional provisions mean. Further, if that reading of the Constitution, assuming it is correct, is out of joint with modern conceptions of policy or fairness the remedy in this case is simple: there is nothing in the Constitution that prevents the Legislature from reversing itself and affording a right to trial by jury of the issue of materiality. No constitutional amendment is needed.

## II

There are other routes which this Court could, but does not, take in this case. It could be claimed, and in fact the defendant so claims, that the due process and fundamental fairness components of our State Constitution require a trial by jury; or that the federal constitutional command of due process so requires—a point not made by defendant. The due process claims raise substantial and difficult questions. They were briefly treated in *Whalen*, in which the Appellate Division held that our perjury statute's requirement of submission of the materiality issue to the judge alone is constitutional. The constitutional issues just mentioned—state due process and fundamental fairness, as well as federal due process—are treated in Judge Baime's concurring opinion. That opinion concludes that, under more recent decisions defining the right to a jury trial (*In re Winship*, 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970)), there is no federal due process right to a trial by jury of the materiality issue. Applying the criteria of *State v. Hunt*, 91 *N.J.* 338, 450 *A.*2d 952 (1982), and other cases, Judge Baime further found that there is no justification for a different result under New Jersey's equivalent due process requirement, but rather "the evidence abounds the other way." *Whalen, supra*, 235 *N.J.Super.* at 517, 563 *A.*2d 457. Finally, that opinion implicitly found no indicia of fundamental unfairness in such a result, namely, adjudication by the court.

Since the due process clause under our State Constitution is not relied upon by the majority, I have not pursued that avenue of inquiry. My research, however, suggests that while very substantial questions remain, at least in those few federal cases that have faced the issues raised by *Winship*'s asserted impact on *Sinclair v. United States*, 279 *U.S.* 263, 49 *S.Ct.* 268, 73 *L.Ed.* 692 (1929), the better view is that based on all federal authority, including recent United States Supreme Court cases, that Court is more likely to hold that the due process requirements of the Federal Constitution do not invalidate the rule that materiality is to be decided by the judge in perjury cases.[5]

I would assume that this Court under those circumstances would not invoke due process under the New Jersey Constitution to expand that right without the justifications called for in *State v. Hunt*, none of which exist. See *Shaner v. Horizon Bancorp., supra*, 116 *N.J.* at 433, 561 *A.2d* 1130 (refusing to expand constitutional right to trial by jury to include claims under the Law Against Discrimination). While the United States Supreme Court has held that federal due process requires that defendants be afforded a jury trial for non-petty

---

[5] *Winship* holds that federal due process requires that the state prove each element of a crime beyond a reasonable doubt. *Sinclair*, decided many years before, holds that materiality is an issue for the court. At best the question seems unresolved; Justice White has recently urged the Court to review the materiality question in a dissent from a denial of certiorari. *Greber v. United States*, 474 *U.S.* 988, 106 *S.Ct.* 396, 88 *L.Ed.2d* 348 (1985) *cited in People v. Hedgecock*, 51 *Cal.3d* 395, 272 *Cal.Rptr.* 803, 810, 795 *P.2d* 1260, 1267 (1990), which expressed no view on whether materiality is question for the jury in perjury prosecutions.

The Court's most recent pronouncement, however, cites *Sinclair* with approval and, albeit in another context, adopts the rule that materiality is an issue for the court. *Kungys v. United States*, 485 *U.S.* 759, 772, 108 *S.Ct.* 1537, 1547, 99 *L.Ed.2d* 839, 854 (1988). See also *United States v. Giacalone*, 587 *F.2d* 5, 6–7 (6th Cir.1978), *cert. denied*, 442 *U.S.* 940, 99 *S.Ct.* 2882, 61 *L.Ed.2d* 310 (1979), in which the court said, in a case involving perjury before a grand jury, that it "has long been settled that the question of materiality in a perjury or false statement case is one of law for the courts to decide * * *. Since the issue of materiality is a legal question, not a question of fact, the government need not prove materiality beyond a reasonable doubt * * *." (citations omitted).

offenses (*e.g., Duncan*), no New Jersey case has ever held that the Federal or State Constitution requires the jury trial of a matter for which no such right existed at common law.

While decisions that this issue must be submitted to the jury exist, they are not based on logic or illogic, even though the analysis includes discussion of that matter, but rather are based, I believe, on an incorrect interpretation of the Federal Constitution (*United States v. Taylor*, 693 *F.Supp.* 828 (N.D.Cal.1988); *Commonwealth v. McDuffee*, 379 *Mass.* 353, 398 *N.E.*2d 463 (1979)); or on the interpretation of a state statutory amendment (*People v. Clemente*, 285 *App.Div.* 258, 136 *N.Y.S.*2d 202 (1954), *aff'd*, 309 *N.Y.* 890, 131 *N.E.*2d 294 (1955)).

As far as fundamental fairness is concerned, that doctrine is ordinarily used in those unique circumstances where no constitutional provision seems to bear on the question but rather a sense of fairness or unfairness prevails. That is not the situation here, for these matters are covered by explicit constitutional provisions and furthermore, as Judge Baime points out, "others equally committed to protecting the civil rights of our citizens have repeatedly adopted and adhered to a contrary view." *Whalen, supra,* 235 *N.J.Super.* at 517, 563 *A.*2d 457.

### III

It is not at all clear that having a jury decide materiality is the better result. It may be the better result in terms of a value judgment: one who believes that absolutely every factual issue in a criminal trial should be submitted to a jury will agree with that conclusion. But if logic and policy—apart from that value judgment—are the touchstones, debate is warranted. The majority criticizes the logic of those who say materiality in perjury cases is for the court since materiality in the admission of evidence is for the court. The majority notes that there is a big difference between the two. There may or there may not be such a difference, but that depends on how our statute is

interpreted. The statute says that perjury is material "if it could have affected the course or outcome of the proceeding * * *." If that means that it is material only if it was reasonably likely, or reasonably possible, or somewhat probable, or something similar, to have affected the outcome, then clearly the judge has to engage in a factual inquiry about the probable or possible impact of the perjurious testimony on the outcome of the proceedings. No more prototypical inquiry for jury consideration could be defined. It is not only quintessentially factual, it is a question on which jurors are experts. On the other hand, if what the statute means, despite a somewhat different thrust in its language, is that the judge is to determine whether the perjurious testimony *bears* on the issue, has some relationship to the issue, and in *that* sense could have affected the outcome, the judge's inquiry is absolutely not one whit different from the inquiry made in deciding whether or not evidence is material—relevant.[6] That question, of statutory

---

[6]The correct construction of the "materiality" definition ("could have affected the course or outcome of the proceeding") is far from clear. The language is first found in the Model Penal Code § 208.20(2) (Tentative Draft No. 6 at 96 (1957)) (hereinafter the "Tentative Draft"), and thereafter incorporated in The New Jersey Penal Code. See New Jersey Criminal Law Revision Commission, *The New Jersey Penal Code, Volume II: Commentary* at 270 (1971).

The Tentative Draft rejects the recommendation of the National Conference of Commissioners on Uniform State Laws that materiality be eliminated. See Tentative Draft, Comment at 109. It goes on to note that its definition does not differ substantially from that given by prevailing law. Our formulation ("could have affected the course or outcome of the proceeding") is equivalent to the "capable of influencing" rule found in many judicial opinions and is close to the definition recommended by the Commissioners on Uniform State Laws as an alternative to the repeal of the materiality requirement. [*Ibid.*]

The Commissioners on Uniform State Laws had recommended as such an alternative: "whether the statement might affect some phase or detail of the trial, hearing, investigation, deposition, certification or declaration * * *." The Tentative Draft apparently objected only to the word "detail." *Ibid.* The Model Penal Code Commentary notes further that a case in which the United States Court of Appeals for the District of Columbia Circuit declared that the witness' testimony was not material because it "could have had no effect on the jury's decision," would be found material under its definition. *Id.* at 111

interpretation, has not yet been determined by this Court, but it is of some interest to note that in *State v. Voorhis*, 52 *N.J.L.* 351, 356, 20 *A.* 26 (Sup.Ct.1890), the test of materiality in perjury cases was that "the testimony will be deemed material whenever it *tends* directly or circumstantially to prove the matters in issue." (emphasis supplied). The common law rule, at one time, was that the defendant must be shown to have intended to deceive the court and the jury, (see *Cermak v. Hertz Corp.*, 53 *N.J.Super.* 455, 463, 147 *A.*2d 800 (App.Div. 1958), *aff'd per curiam*, 28 *N.J.* 568, 147 *A.*2d 795 (1959); *State v. Winters, supra*, 140 *N.J.Super.* at 118, 355 *A.*2d 221; 60A *Am.Jur.2d Perjury* § 1 (1988))—suggesting a clearly factual scope for the materiality inquiry, but the statute changed that when it provided that defendant's belief as to materiality is irrelevant. *N.J.S.A.* 2C:28–1(b). Furthermore, the statute allows a perjury conviction even if the evidence is inadmissible. The logic or illogic, therefore, of a conclusion that materiality is no more a function for the jury under the perjury statute than it is on the question of the admissibility of evidence depends completely on the construction of this statutory provision.

As far as policy is concerned—again putting aside the value judgment about the right to trial by jury—the correct result is not at all clear. The conflict in decisions on this issue in England was resolved by a statute, after much debate, the

(referring to *Pyle v. United States*, 156 *F.*2d 852 (D.C.Cir.1946)). Finally, the commentary notes that "[o]ur definition accepts the majority position, inasmuch as we do not specify any particular *degree* of influence which the falsification might have." Tentative Draft, Comment at 112.

Both sides in this debate agree that the significance of "materiality" should be diminished in perjury laws—the Commissioners on Uniform State Laws concluding it should be eliminated, the drafters of the Model Penal Code intending to clarify and at the same time diminish the possibility of technical or unwarranted defense to perjury charges. The outcome, however, is that despite the apparent thrust of the statute's definition, it may still mean nothing more than that the testimony "tends directly or circumstantially to prove the matters in issue," *State v. Voorhis*, 52 *N.J.L.* 351, 356, 20 *A.* 26 (Sup.Ct.1890), not substantially different from evidential materiality.

resolution being in favor of determination by the court. *The Perjury Act*, 1911, 1 & 2 Geo. 5 c. 6, § 1(6).

The outcome of a debate on policy as well as on logic may also depend on the meaning given to the statutory provision. If it means "materiality" only in the sense of whether the perjurious statement "tends" to prove something, there is no point in having a jury decide it. Indeed, if *that* is what it means, it is hard to argue that it is an "element" of the crime. On the other hand, if materiality requires an exhaustive examination of the case in which the perjury was committed to determine whether or not it was likely that it could have affected the outcome, then the *policy* argument proceeds to the question of whether the jury or the judge is better suited to make that determination. The "trial within a trial" will exist regardless of where the power is seated, but the potential delay, confusion, and expense would seem to be diminished if it is the judge rather than the jury who handles that part of the case. More persuasive, however, is the observation that committing this issue to the jury significantly diminishes the likelihood of punishing perjury when it was unsuccessful. The jury will be asked to convict on the ground that the alleged perjurer's statement could have affected the outcome of the case when in fact it did not. It may convict, and perhaps just as often as will a judge under those circumstances, but a fair case can be made that unsuccessful perjury will rarely be punished at the hands of a jury. The relevancy, as to all of these issues, of the fact that we have a false swearing statute without any requirement of materiality, has not been treated here although it may be of importance.

It is of some moment that the Law Revision Commission that drafted our Code of Criminal Justice, as well as the drafters of the Model Penal Code, neither the slave of tradition, history or illogic, (nor disciples of "the oppressive practices of Crown Courts" *ante* at 208, 603 *A.*2d at 936) agreed that this issue should be tried by a judge. *See* New Jersey Criminal Law Revision Commission, *The New Jersey Penal Code, Volume II:*

*Commentary* (1971) at 270; *Model Penal Code* § 241.1 (1957), commentary at 124–26.

The result of the majority may be the better result, and if it is I regret the law that compels me to differ.  It is a Constitution we are construing, however, and its meaning seems to me to be clear and beyond the power of this Court to expand, especially when to do so invalidates an otherwise perfectly legitimate exercise of legislative power.[7]

*For reversal and remandment* Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

Chief Justice WILENTZ, dissents.

Justice HANDLER, not participating.

---

[7] I reach no conclusion on the federal constitutional question.  Defendant does not raise it, it is not within the scope of our grant of certification, the majority does not explicitly decide it, and it has not been fully briefed nor argued.